*490 Justice Scalia
delivered the opinion of the Court.
Respondents are a group of organizations dedicated to protecting the environment. (We will refer to them collectively as “Earth Island.”) They Seek to prevent the United States Forest Service from enforcing regulations that exempt small fire-rehabilitation and timber-salvage projects from the notice, comment, and appeal process used by the Forest Service for more significant land management decisions. We must determine whether respondents have standing to challenge the regulations in the absence of a live dispute over a concrete application of those regulations.
I
In 1992, Congress enacted the Forest Service Decision-making and Appeals Reform Act (Appeals Reform Act or Act), Pub. L. 102-381, Tit. Ill, §322, 106 Stat. 1419, note following 16 U. S. C. § 1612. Among other things, this required the Forest Service to establish a notice, comment, and appeal process for “proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans developed under the Forest and Rangeland Renewable Resources Planning Act of 1974.” Ibid.
The Forest Service’s regulations implementing the Act provided that certain of its procedures would not be applied to projects that the Service considered categorically excluded from the requirement to file an environmental impact statement (EIS) or environmental assessment (EA). 36 CFR §§ 215.4(a) (notice and comment), 215.12(f) (appeal) (2008). Later amendments to the Forest Service’s manual of implementing procedures, adopted by rule after notice and *491 comment, provided that fire-rehabilitation activities on areas of less than 4,200 acres, and salvage-timber sales of 250 acres or less, did not cause a significant environmental impact and thus would be categorically exempt from the requirement to file an EIS or EA. 68 Fed. Reg. 33824 (2003) (Forest Service Handbook (FSH) 1909.15, ch. 30, §31.2(11)); 68 Fed. Reg. 44607 (FSH 1909.15, ch. 30, §31.2(13)). This had the effect of excluding these projects from the notice, comment, and appeal process.
In the summer of 2002, fire burned a significant area of the Sequoia National Forest. In September 2003, the Service issued a decision memo approving the Burnt Ridge Project, a salvage sale of timber on 238 acres damaged by that fire. Pursuant to its categorical exclusion of salvage sales of less than 250 acres, the Forest Service did not provide notice in a form consistent with the Appeals Reform Act, did not provide a period of public comment, and did not make an appeal process available.
In December 2003, respondents filed a complaint in the Eastern District of California, challenging the failure of the Forest Service to apply to the Burnt Ridge Project § 215.4(a) of its regulations implementing the Appeals Reform Act (requiring prior notice and comment), and §215.12(f) of the regulations (setting forth an appeal procedure). The complaint also challenged six other Forest Service regulations implementing the Act that were not applied to the Burnt Ridge Project. They are irrelevant to this appeal.
The District Court granted a preliminary injunction against the Burnt Ridge salvage-timber sale. Soon thereafter, the parties settled their dispute over the Burnt Ridge Project and the District Court concluded that “the Burnt Ridge timber sale is not at issue in this case.” Earth Island Inst. v. Pengilly, 376 F. Supp. 2d 994, 999 (ED Cal. 2005). The Government argued that, with the Burnt Ridge dispute settled, and with no other project before the court in which respondents were threatened with injury in fact, respond *492 ents lacked standing to challenge the regulations; and that absent a concrete dispute over a particular project a challenge to the regulations would not be ripe. The District Court proceeded, however, to adjudicate the merits of Earth Island’s challenges. It invalidated five of the regulations (including §§ 215.4(a) and 215.12(f)), id., at 1011, and entered a nationwide injunction against their application, Earth Island Inst. v. Ruthenbeck, No. CIV F-03-6386 JKS, 2005 WL 5280466, *2 (Sept. 20, 2005).
The Ninth Circuit held that Earth Island’s challenges to regulations not at issue in the Burnt Ridge Project were not ripe for adjudication because there was “not a sufficient ‘case or controversy’” before the court to sustain a facial challenge. Earth Island Inst. v. Ruthenbeck, 490 F. 3d 687, 696 (2007) (amended opinion). It affirmed, however, the District Court’s determination that §§ 215.4(a) and 215.12(f), which were applicable to the Burnt Ridge Project, were contrary to law, and upheld the nationwide injunction against their application.
The Government sought review of the question whether Earth Island could challenge the regulations at issue in the Burnt Ridge Project, and if so whether a nationwide injunction was appropriate relief. We granted certiorari, 552 U. S. 1162 (2008).
II
In limiting the judicial power to “Cases” and “Controversies,” Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law. Except when necessary in the execution of that function, courts have no charter to review and revise legislative and executive action. See Lujan v. Defenders of Wildlife, 504 U. S. 555, 559-560 (1992); Los Angeles v. Lyons, 461 U. S. 95, 111-112 (1983). This limitation “is founded in concern about the proper — and *493 properly limited — role of the courts in a democratic society.” Warth v. Seldin, 422 U. S. 490, 498 (1975). See United States v. Richardson, 418 U. S. 166, 179 (1974).
The doctrine of standing is one of several doctrines that reflect this fundamental limitation. It requires federal courts to satisfy themselves that “the plaintiff has ‘alleged such a personal stake in the outcome of the controversy’ as to warrant his invocation of federal-court jurisdiction.” Warth, supra, at 498-499. He bears the burden of showing that he has standing for each type of relief sought. See Lyons, supra, at 105. To seek injunctive relief, a plaintiff must show that he is under threat of suffering “injury in fact” that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U. S. 167, 180-181 (2000). This requirement assures that “there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party,” Schlesinger v. Reservists Comm. to Stop the War, 418 U. S. 208, 221 (1974). Where that need does not exist, allowing courts to oversee legislative or executive action “would significantly alter the allocation of power . . . away from a democratic form of government,” Richardson, supra, at 188 (Powell, J., concurring).
The regulations under challenge here neither require nor forbid any action on the part of respondents. The standards and procedures that they prescribe for Forest Service appeals govern only the conduct of Forest Service officials engaged in project planning. “[Wjhen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily ‘substantially more difficult’ to establish.” Defenders of *494 Wildlife, supra, at 562. Here, respondents can demonstrate standing only if application of the regulations by the Government will affect them in the manner described above.
It is common ground that the respondent organizations can assert the standing of their members. To establish the concrete and particularized injury that standing requires, respondents point to their members’ recreational interests in the national forests. While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice. Sierra Club v. Morton, 405 U. S. 727, 734-736 (1972).
Affidavits submitted to the District Court alleged that organization member Ara Marderosian had repeatedly visited the Burnt Ridge site, that he had imminent plans to do so again, and that his interests in viewing the flora and fauna of the area would be harmed if the Burnt Ridge Project went forward without incorporation of the ideas he would have suggested if the Forest Service had provided him an opportunity to comment. The Government concedes this was sufficient to establish Article III standing with respect to Burnt Ridge. Brief for Petitioners 28. Marderosian’s threatened injury with regard to that project was originally one of the bases for the present suit. After the District Court had issued a preliminary injunction, however, the parties settled their differences on that score. Marderosian’s injury in fact with regard to that project has been remedied, and it is, as the District Court pronounced, “not at issue in this case.” 376 F. Supp. 2d, at 999. We know of no precedent for the proposition that when a plaintiff has sued to challenge the lawfulness of certain action or threatened action but has settled that suit, he retains standing to challenge the basis for that action (here, the regulation in the abstract), apart from any concrete application that threatens imminent harm to his interests. Such a holding would fly in the face of Article Ill’s injury-in-fact requirement. See Lyons, supra, at 111.
*495 Respondents have identified no other application of the invalidated regulations that threatens imminent and concrete harm to the interests of their members. The only other affidavit relied on was that of Jim Bensman.* He asserted, first, that he had suffered injury in the past from development on Forest Service land. That does not suffice for several reasons: because it was not tied to application of the challenged regulations, because it does not identify any particular site, and because it relates to past injury rather than imminent future injury that is sought to be enjoined.
Bensman’s affidavit further asserts that he has visited many national forests and plans to visit several unnamed national forests in the future. Respondents describe this as a mere failure to “provide the name of each timber sale that affected [Bensman’s] interests,” Brief for Respondents 44. It is much more (or much less) than that. It is a failure to allege that any particular timber sale or other project claimed to be unlawfully subject to the regulations will impede a specific and concrete plan of Bensman’s to enjoy the national forests. The national forests occupy more than 190 million acres, an area larger than Texas. See Meet the Forest Service, http://www.fs.fed.us/aboutus/meetfs.shtml (as visited Feb. 27, 2009, and available in Clerk of Court’s case file). There may be a chance, but is hardly a likelihood, that Bensman’s wanderings will bring him to a parcel about to be affected by a project unlawfully subject to the regulations. Indeed, without further specification it is impossible to tell which projects are (in respondents’ view) unlawfully subject to the regulations. The allegations here present a weaker likelihood of concrete harm than that which we found insufficient in Lyons, 461 U. S. 95, where a plaintiff who alleged *496 that he had been injured by an improper police chokehold sought injunctive relief barring use of the hold in the future. We said it was “no more than conjecture” that Lyons would be subjected to that chokehold upon a later encounter. Id., at 108. Here we are asked to assume not only that Bensman will stumble across a project tract unlawfully subject to the regulations, but also that the tract is about to be developed by the Forest Service in a way that harms his recreational interests, and that he would have commented on the project but for the regulation. Accepting an intention to visit the national forests as adequate to confer standing to challenge any Government action affecting any portion of those forests would be tantamount to eliminating the requirement of concrete, particularized injury in fact.
The Bensman affidavit does refer specifically to a series of projects in the Allegheny National Forest that are subject to the challenged regulations. It does not assert, however, any firm intention to visit their locations, saying only that Bensman “ Vant[s] to’” go there. Brief for Petitioners 6. This vague desire to return is insufficient to satisfy the requirement of imminent injury: “Such ‘some day’ intentions— without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the ‘actual or imminent’ injury that our cases require.” Defenders of Wildlife, 504 U. S., at 564.
Respondents argue that they have standing to bring their challenge because they have suffered procedural injury, namely, that they have been denied the ability to file comments on some Forest Service actions and will continue to be so denied. But deprivation of a procedural right without some concrete interest that is affected by the deprivation— a procedural right in vacuo — is insufficient to create Article III standing. Only a “person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redress-ability and immediacy.” Id., at 572, n. 7 (emphasis added). *497 Respondents alleged such injury in their challenge to the Burnt Ridge Project, claiming that but for the allegedly unlawful abridged procedures they would have been able to oppose the project that threatened to impinge on their concrete plans to observe nature in that specific area. But Burnt Ridge is now off the table.
It makes no difference that the procedural right has been accorded by Congress. That can loosen the strictures of the redressability prong of our standing inquiry — so that standing existed with regard to the Burnt Ridge Project, for example, despite the possibility that Earth Island’s allegedly guaranteed right to comment would not be successful in persuading the Forest Service to avoid impairment of Earth Island’s concrete interests. See ibid. Unlike redressability, however, the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.
“[I]t would exceed [Article Ill’s] limitations if, at the behest of Congress and in the absence of any showing of concrete injury, we were to entertain citizen suits to vindicate the public’s nonconcrete interest in the proper administration of the laws.... [T]he party bringing suit must show that the action injures him in a concrete and personal way.” Id., at 580-581 (Kennedy, J., concurring in part and concurring in judgment).
Ill
The dissent proposes a hitherto unheard-of test for organizational standing: whether, accepting the organization’s self-description of the activities of its members, there is a statistical probability that some of those members are threatened with concrete injury. Since, for example, the Sierra Club asserts in its pleadings that it has more than “ ‘700,000 members nationwide, including thousands of members in California’ who ‘use and enjoy the Sequoia National Forest,’ ” post, at 502 (opinion of Breyer, J.), it is probable (according to the dissent) that some (unidentified) members have planned to *498 visit some (unidentified) small parcels affected by the Forest Service’s procedures and will suffer (unidentified) concrete harm as a result. This novel approach to the law of organizational standing would make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm. In Defenders of Wildlife, supra, at 563, we held that the organization lacked standing because it failed to “submit affidavits . . . showing, through specific facts . . . that one or more of [its] members would ... be ‘directly’ affected” by the allegedly illegal activity. Morton, 405 U. S. 727, involved the same Sierra Club that is a party in the present case, and a project in the Sequoia National Forest. The principal difference from the present case is that the challenged project was truly massive, involving the construction of motels, restaurants, swimming pools, parking lots, and other structures on 80 acres of the Forest, plus ski lifts, ski trails, and a 20-mile access highway. We did not engage in an assessment of statistical probabilities that one of the Sierra Club’s members would be adversely affected, but held that the Sierra Club lacked standing. We said:
“The Sierra Club failed to allege that it or its members would be affected in any of their activities or pastimes by the Disney development. Nowhere in the pleadings or affidavits did the Club state that its members use Mineral King for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions of the respondents.” Id., at 735.
And in FW/PBS, Inc. v. Dallas, 493 U. S. 215, 235 (1990), we noted that the affidavit provided by the city to establish standing would be insufficient because it did not name the individuals who were harmed by the challenged license-revocation program. This requirement of naming the affected members has never been dispensed with in light of *499 statistical probabilities, but only where all the members of the organization are affected by the challenged activity. See, e. g., NAACP v. Alabama ex rel. Patterson, 357 U. S. 449, 459 (1958) (all organization members affected by release of membership lists).
A major problem with the dissent’s approach is that it accepts the organizations’ self-descriptions of their membership, on the simple ground that “no one denies” them, post, at 506. But it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties. Bender v. Williamsport Area School Dist., 475 U. S. 534, 541 (1986). Without individual affidavits, how is the court to assure itself that the Sierra Club, for example, has “ ‘thousands of members’ ” who “ ‘use and enjoy the Sequoia National Forest’ ”? And, because to establish standing plaintiffs must show that they “use the area affected by the challenged activity and not an area roughly in the vicinity of” a project site, Defenders of Wildlife, 504 U. S., at 566 (internal quotation marks omitted), how is the court to assure itself that some of these members plan to make use of the specific sites upon which projects may take place? Or that these same individuals will find their recreation burdened by the Forest Service’s use of the challenged procedures? While it is certainly possible — perhaps even likely — that one individual will meet all of these criteria, that speculation does not suffice. “Standing,” we have said, “is not ‘an ingenious academic exercise in the conceivable’ . . . [but] requires ... a factual showing of perceptible harm.” Ibid. In part because of the difficulty of verifying the facts upon which such probabilistic standing depends, the Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm — surely not a difficult task here, when so many thousands are alleged to have been harmed.
The dissent would have us replace the requirement of “ ‘imminent’ ” harm, which it acknowledges our cases estab *500 lish, see post, at 505, with the requirement of “ ‘a realistic threat’ that reoccurrence of the challenged activity would cause [the plaintiff] harm ‘in the reasonably near future,’” ibid. That language is taken, of course, from an opinion that did not find standing, so the seeming expansiveness of the test made not a bit of difference. The problem for the dissent is that the timely affidavits no more meet that requirement than they meet the usual formulation. They fail to establish that the affiants’ members will ever visit one of the small parcels at issue.
The dissent insists, however, that we should also have considered the late-filed affidavits. It invokes Federal Rule of Civil Procedure 15(d) (West 2008 rev. ed.), which says that “[t]he court may permit supplementation even though the original pleading is defective in stating a claim or defense.” So also does Rule 21 permit joinder of parties “at any time.” But the latter no more permits joinder of parties, than the former permits the supplementation of the record, in the circumstances here: after the trial is over, judgment has been entered, and a notice of appeal has been filed. The dissent cites no instance in which “supplementation” has been permitted to resurrect and alter the outcome in a case that has gone to judgment, and indeed after notice of appeal had been filed. If Rule 15(b) allows additional facts to be inserted into the record after appeal has been filed, we are at the threshold of a brave new world of trial practice in which Rule 60 has been swallowed whole by Rule 15(b).
* * *
Since we have resolved this case on the ground of standing, we need not reach the Government’s contention that plaintiffs have not demonstrated that the regulations are ripe for review under the Administrative Procedure Act. We likewise do not reach the question whether, if respond *501 ents prevailed, a nationwide injunction would be appropriate. And we do not disturb the dismissal of respondents’ challenge to the remaining regulations, which has not been appealed.
The judgment of the Court of Appeals is reversed in part and affirmed in part.

It is so ordered.

After the District Court had entered judgment, and after the Government had filed its notice of appeal, respondents submitted additional affidavits to the District Court. We do not consider these. If respondents had not met the challenge to their standing at the time of judgment, they could not remedy the defect retroactively.