**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CENTER FOR FOOD SAFETY; ORGANIC SEED ALLIANCE; SIERRA CLUB; HIGH MOWING ORGANIC SEEDS, | No. 10-17719 |
| | D.C. No. 3:10-cv-04038-JSW |
| Plaintiffs - Appellees, | OPINION |
| v. | |
| THOMAS J. VILSACK, | |
| Defendant, | |
| and | |
| MONSANTO COMPANY; AMERICAN CRYSTAL SUGAR COMPANY; SYNGENTA SEEDS, INC.; BETASEED, INC., | |
| Intervenor-Defendants - Appellants. | |

| | |
|---|---|
| CENTER FOR FOOD SAFETY; ORGANIC SEED ALLIANCE; SIERRA CLUB; HIGH MOWING ORGANIC SEEDS, | No. 10-17722 |
| | D.C. No. 3:10-cv-04038-JSW |
| Plaintiffs - Appellees, | OPINION |

v.

THOMAS J. VILSACK,

          Defendant - Appellant,

  and

MONSANTO COMPANY; AMERICAN
CRYSTAL SUGAR COMPANY;
SYNGENTA SEEDS, INC.; BETASEED,
INC.,

          Intervenor-Defendants.

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted February 15, 2011
San Francisco, California

Filed

Before: SCHROEDER and THOMAS, Circuit Judges, and BENNETT, District
Judge.[*]

Opinion by Judge Sidney R. Thomas

THOMAS, Circuit Judge:

[*]      The Honorable Mark W. Bennett, District Judge for the U.S. District
Court for Northern Iowa, Sioux City, sitting by designation.

The Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS") and Intervenors Monsanto *et al.* appeal the district court's decision granting a preliminary injunction that mandates the destruction of juvenile Roundup Ready sugar beets planted pursuant to permits issued by the agency. Because the plaintiffs have failed to demonstrate irreparable harm, we reverse and vacate the preliminary injunction and direct that the permits be given full force and effect.

I

Olivier de Serres, the father of French agriculture, exclaimed in 1600 of the sugar beet that "this choice food yields a juice like sugar syrup when cooked." More than a century later, the German scientist Andreas Marggraf demonstrated that the sweet-tasting crystals obtained from beet juice were the same as those from sugar cane. Necessity being the mother of invention, it took a trade blockade in the Napoleonic era to accelerate the production of sugar from beets.

At present, the United States meets the considerable demand for domestic refined sugar by producing refined sugar from domestic sugar beets, refining raw cane sugar produced by domestic and foreign sugarcane producers, and importing refined cane sugar. About 44% of the domestic refined sugar supply comes from

sugar beets. The contribution of the sugar beet to the national agricultural economy is, to say the least, considerable.

The sugar beet is a biennial crop which develops a sugar-rich tap root in the first year (the vegetative stage) and a flowering seed stalk in the second year (the reproductive stage). Early in its development, it is known as a "steckling," i.e. a small, juvenile seedling that has grown neither a root nor seeds. When the beet matures, its root is harvested and processed into sugar; the pulp is used for food. Sugar beets grown for their root crop are grown only through the vegetative stage, maximizing their sugar content.[1]

If allowed to reach the reproductive stage, a sugar beet uses the stored sugar to grow a seed stalk, a process known as "bolting." Sugar beets are largely wind pollinated, though their pollen may also be dispersed by insects, and they are sexually compatible with certain other beet (*beta vulgaris*) crops, such as table beets and Swiss chard.

---

[1] The production of refined sugar from sugar beets follows a four-year cycle. For example, the commercial seed crop planted in fall 2010 would be harvested for commercial seed in fall 2011, processed in winter 2011–2012, and planted in spring 2012 for sugar beet (root) production. In fall 2012, the beet crop would be harvested, processed, and become the refined sugar supply in 2013.

Weeds significantly reduce sugar beet yields and constitute a serious problem for farmers. Farmers often use herbicides, including "Roundup" products, to stop weeds from germinating.

In 1988, Monsanto and KWS SAAT AG ("KWS"), the parent company of Betaseed, developed Roundup Ready sugar beets, which are genetically engineered to tolerate glyphosate, the active ingredient in "Roundup" herbicides. Monsanto owns the intellectual property in the gene for glyphosate tolerance; KWS inserted that gene into sugar beets. Together, they developed a particular variety of Roundup Ready sugar beet, called "event H7-1," by transforming a KWS proprietary line of sugar beets. With the Roundup Ready sugar beet's glyphosate-tolerant trait, farmers can treat their fields with Roundup products to eliminate weeds without harming the (resistant) sugar beets. The sugar produced from Roundup Ready sugar beets is identical to sugar processed from conventional sugar beets, and has been approved for food safety in the United States and the European Union.

II

The development of Roundup Ready sugar beets is subject to federal regulation. Congress passed the Plant Protection Act, 7 U.S.C. § 7701 *et seq.*, to protect the agriculture, environment, and economy of the United States from "plant

5

pests or noxious weeds." *Id.* § 7701(1); *see also Monsanto v. Geertson Seed Farms*, --- U.S. ---, 130 S. Ct. 2743, 2750 (2010) (describing regulatory scheme). The Act provides that the Secretary of the Department of Agriculture may issue regulations "to prevent the introduction of plant pests into the United States or the dissemination of plant pests within the United States," *id.* § 7711(a), and the Secretary has delegated that authority to APHIS, 7 C.F.R. §§ 2.22(a), 2.80(a)(36). APHIS regulates the "introduction"—i.e., the importation, interstate movement, or release into the environment—of "organisms and products altered or produced through genetic engineering that are plant pests or are believed to be plant pests," referred to as "regulated articles." *Id.* §§ 340.0 (a)(2) & n.1, 340.1 ("Part 340").

Roundup Ready sugar beets were originally "regulated articles" under the Plant Protection Act and accompanying regulations because they were genetically engineered with a gene sequence from a donor organism that is a plant pest. As regulated articles, they could lawfully be planted outdoors (as a confined field release) or moved interstate only if authorized by an APHIS notification or permit. *See Id.* §§ 340.0(a), 340.3 (notification), 340.4 (permits). In addition, any person could petition the agency to deregulate Roundup Ready sugar beets, in whole or in part. *Id.* § 340.6.

6

In deciding whether to issue Part 340 permits or to deregulate a genetically engineered plant variety, APHIS must also comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* *See Monsanto*, 130 S. Ct. at 2750. NEPA requires an agency to prepare an environmental impact statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An agency need not prepare an EIS for a particular proposal if it finds, on the basis of a shorter "environmental assessment" ("EA"), that the action will not have a significant impact on the environment. 40 C.F.R. §§ 1508.9(a), 1508.13. Additionally, agencies may identify classes of actions that normally do not require the preparation of either an EIS or an EA, called "categorical exclusions." *Id.* § 1507.3(b)(2). Categorical exclusions are "categor[ies] of actions which do not individually or cumulatively have a significant effect on the human environment." *Id.* § 1508.4.

APHIS has established a categorical exclusion for "[p]ermitting, or acknowledgment of notifications for, confined field releases of genetically engineered organisms and products." 7 C.F.R. § 372.5(c)(3)(ii).

III

The narrow question presented by this appeal is whether the district court abused its discretion by ordering the destruction of certain permitted juvenile

7

Roundup Ready sugar beet plants. However, the dispute has arisen in a broader context.

The litigation between Plaintiffs, APHIS, and Intervenors concerns the regulation, deregulation, and permitting of Roundup Ready sugar beets. The parties' disputes center on three groups of APHIS decisions: (1) the agency's March 2005 complete deregulation of Roundup Ready sugar beets; (2) its August 2010 issuance of permits authorizing the planting of Roundup Ready sugar beet stecklings in select, remote areas; and (3) recently-finalized February 2011 interim actions to partially deregulate Roundup Ready sugar beets. The present action concerns the permits issued in August 2010.

The March 2005 complete deregulation and February 2011 partial deregulation decisions are not before us. In the litigation known as *Sugar Beets I*,[2] the district court vacated APHIS's March 2005 complete deregulation decision, after ruling that the agency violated NEPA by failing to prepare an Environmental

---

[2] *"Sugar Beets I"* refers to Plaintiffs' challenge to APHIS's March 2005 decision to completely deregulate Roundup Ready sugar beets, and *"Sugar Beets II"* refers to Plaintiffs' separate challenge to the August 2010 issuance of the steckling permits.

Impact Statement ("EIS").[3]  APHIS is currently preparing an EIS in advance of any new decision to fully deregulate Roundup Ready sugar beets, and we do not address any aspect of the *Sugar Beets I* decision here.[4]  Nor do we review APHIS's

---

[3] APHIS initially classified Roundup Ready sugar beets as "regulated articles."  In November 2003, Monsanto and KWS petitioned APHIS to deregulate Roundup Ready sugar beets—that is, they sought a determination that event H7-1 and its progeny would not present a plant pest risk and, therefore, would no longer be a "regulated article" under Part 340.  In response, the agency published an EA in February 2005, which made a finding of no significant impact ("FONSI") on the human environment from the "unconfined agricultural use of event H7-1."  APHIS thus concluded that an EIS was not required, and in March 2005, the agency unconditionally deregulated Roundup Ready sugar beets.  Monsanto/KSW Roundup Ready sugar beets were no longer considered regulated articles under Part 340.  Plaintiffs challenged complete deregulation in *Sugar Beets I*, and the district court vacated APHIS's deregulation decision, remanded to the agency to prepare an EIS, and denied Plaintiffs' motion for a permanent injunction.

[4] This consolidated appeal, however, does include Intervenors' claim that the *Sugar Beets I* court improperly denied its motion to intervene at the merits phase. We will address Intervenors' appeal (No. 10-17335) in a separate decision.

9

actions announced during the pendency of this appeal, regarding partial deregulation while it prepares the EIS for complete deregulation.[5]

In *Sugar Beets II*, the district court issued a preliminary injunction in favor of Plaintiffs, requiring the destruction of juvenile sugar beet "stecklings" planted by Intervenors under permits issued by APHIS in September 2010. APHIS issued these Part 340 permits to four seed companies—Intervenors American Crystal Sugar Co., Betaseed, and Syngenta, as well as non-party SES vanderHave USA—which had applied for permission to plant Roundup Ready sugar beet seed in order to grow stecklings. The permits authorize steckling growth on limited acreage in defined geographic locations (in Oregon and Arizona), and include conditions prohibiting flowering or pollination before the permits expire on February 28, 2011. With each permit, APHIS issued NEPA "Decision

---

[5] As *Sugar Beets II* and this appeal progressed, APHIS has undertaken further interim actions to partially deregulate Roundup Ready sugar beets. In October 2010, the agency published notice that Monsanto and KWS had filed a supplemental petition requesting partial deregulation, 75 Fed. Reg. 62,365, and pursuant to that petition, on November 4, 2010, APHIS released for public comment a draft interim EA, 75 Fed. Reg. 67,945. APHIS announced the final EA/FONSI on February 4, 2011, which addresses the agency's decisions to undertake two interim actions: (1) limited permitting for the Roundup Ready sugar beet *seed* crop and (2) a conditional, partial deregulation of the Roundup Ready sugar beet *root* crop. The interim actions, as well as the EA/FONSI, took effect on February 8, 2011, by notice published at 76 Fed. Reg. 6,759. Both interim actions will expire no later than December 31, 2012, or earlier in 2012 if APHIS completes its EIS of full deregulation.

Worksheets" explaining that limited steckling growth would have no significant environmental impacts.

Less than a week after the permits issued, Plaintiffs filed the present suit, *Sugar Beets II*, and sought a temporary restraining order and a preliminary injunction. In late September 2010, the district court concluded that Plaintiffs were likely to prevail on their NEPA claims. In early November 2010, the court held a three-day evidentiary hearing on remedies. At the end of the month, the court issued a preliminary injunction and ordered the destruction of the stecklings. We stayed the injunction pending appeal until February 28, 2011.

IV

To obtain injunctive relief, Plaintiffs must show themselves to be "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009).

In challenging the steckling permits, Plaintiffs claim that APHIS violated NEPA by "artificially carving up" the stages of Roundup Ready sugar beet planting and production, rather than performing a single analysis of the crop's

11

impacts as NEPA requires. They assert standing on the basis of a NEPA procedural injury that threatens the concrete interests of their members, who include organic farmers and consumers. To show a cognizable injury in fact, therefore, Plaintiffs must demonstrate that (1) APHIS violated certain procedural rules; (2) these rules protect Plaintiffs' concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969–70 (9th Cir. 2003).[6]

---

[6] APHIS and Intervenors err in suggesting that *Summers* rejected the "reasonable probability" standard. In *Summers*, the Supreme Court stated that to seek injunctive relief, plaintiffs must be "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent." 129 S. Ct. at 1149. Yet, *Summers* reaffirmed the unique nature of procedural injuries—namely, that a plaintiff seeking to enforce procedures that protect his concrete interests may do so "without meeting all the normal standards for redressability and immediacy." 129 S. Ct. at 1151 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992)); *see also Lujan*, 504 U.S. at 572 n.7 (explaining that "one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an [EIS], even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years"). The "reasonable probability" standard derives from that principle, *see Citizens for Better Forestry*, 341 F.3d at 972, which *Summers* left unchanged, *see, e.g.*, *Friends of Tims Ford v. TVA*, 585 F.3d 955, 968 (6th Cir. 2009) (applying "reasonable probability" standard post-*Summers*). Of course, as our decision illustrates, a plaintiff may establish standing to seek injunctive relief yet fail to show the likelihood of irreparable harm necessary to obtain it.

12

The district court properly concluded that these requirements were satisfied. First, Plaintiffs' claim that APHIS violated NEPA by improperly segmenting its environmental analysis is a cognizable procedural injury. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (noting that the failure to prepare a proper NEPA analysis is cognizable). That APHIS may in fact have complied with NEPA does not diminish Plaintiffs' standing to bring their claim. *Citizens for Better Forestry*, 341 F.3d at 971 n.5 ("A contrary rule would allow only successful environmental plaintiffs standing to bring their claims.").

Second, plaintiffs meet our circuit's "concrete interest" test, which "[w]e have described . . . as 'requiring a geographic nexus between the individual asserting the claim and the location suffering an environmental impact.'" *W. Watersheds Project v. Kraayenbrink*, Nos. 08-35359, 08-35360, --- F.3d ---, 2011 WL 149363, at *9 (9th Cir. Jan. 19, 2011) (quoting *Citizens for Better Forestry*, 341 F.3d at 971). The declarations submitted by plaintiffs establish a geographic nexus between their members and the permitted stecklings as well as later planting and production of Roundup Ready sugar beets. For example, Frank Morton owns an organic seed business "in the heart of the Willamette Valley," where most sugar beet seed is grown, and where Morton grows *Beta vulgaris* seed crops, including chard and table beets. *See id.*

13

Finally, it is "reasonably probable" that the challenged action will threaten Plaintiffs' concrete interests. As Roundup Ready sugar beet planting and production proceeds, farmers like Morton declare that they must test their organic seed crops to ensure that they are "GE-free" and take preventative measures such as relocating their fields or creating buffer zones. *See Monsanto*, 130 S. Ct. at 2754–55 (recognizing testing and preventative measures, "which [farmers] will suffer even if their crops are not actually infected with the Roundup ready gene," as sufficiently concrete injuries).

"Once a plaintiff has established an injury in fact under NEPA, the causation and redressability requirements are relaxed." *Citizens for Better Forestry*, 341 F.3d at 975 (internal quotations omitted). Since "it is enough that a revised [NEPA analysis] may redress plaintiffs' injuries," causation and redressability are satisfied here. *W. Watersheds Project*, 2011 WL 149363, at *9 (quoting *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1113 (9th Cir. 2002)).[7]

---

[7] Plaintiffs also meet two additional requirements of standing, which neither APHIS nor Intervenors dispute. First, as organizations, Plaintiffs must and do meet the requirements for suing on behalf of their members who have standing: the issues at stake are germane to the interests of Plaintiffs, and nothing indicates that resolving this case would require or even be aided by the participation of their individual members. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Second, Plaintiffs' claims fall within NEPA's zone of interests. *See Monsanto*, 130 S. Ct. at 2756.

## V

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008).

After *Winter*, "plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, No. 09-35756, --- F.3d ---, 2011 WL 208360, at *3 (9th Cir. Jan. 25, 2011). Applying that standard, the district court concluded that Plaintiffs have demonstrated a likelihood of irreparable harm stemming from (1) the permitted steckling plants and (2) the "entire cycle" of Roundup Ready sugar beet planting and production. On this record, we must disagree, and we conclude that the district court abused its discretion in granting a preliminary injunction requiring destruction of the steckling plants.

Plaintiffs have not demonstrated that the permitted steckling plants present a possibility, much less a likelihood, of genetic contamination or other irreparable harm. The undisputed evidence indicates that the stecklings pose a negligible risk

15

of genetic contamination, as the juvenile plants are biologically incapable of flowering or cross-pollinating before February 28, 2011, when the permits expire.[8]

In finding otherwise, the district court alluded to *past* examples of contamination with other plants, but mentioned no "continuing, present adverse effects." *Lujan*, 504 U.S. at 563 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Past harms can tend to show the threat of a repeated injury, *Bates v. U.S. Postal Serv.*, 511 F.3d 974, 985 (9th Cir. 2007), but the record reveals no examples of contamination by pollination under the restricted conditions imposed by the permits. To the contrary, APHIS has permitted over 100 confined field releases of Roundup Ready sugar beets with no known "loss of confinement," as the agency explained in NEPA documents issued with each permit. Plaintiffs give us little reason not to defer to APHIS's technical expertise and judgments on this score. *See Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (en banc), *overruled on other grounds by Winter*, 129 S. Ct. 365.

Plaintiffs suggest that the district court based its findings on "substantial, extensive evidence," but they refer us to evidence of contamination risks in sugar

---

[8] Perhaps redundantly, as APHIS points out, the steckling permits contain express conditions prohibiting flowering or pollination.

beets and other crops, *all* of which speaks to later stages in the sugar beet life cycle.

The Supreme Court's recent *Monsanto* decision, which spoke to the very regulatory context we review here, provides guidance. The Court warned against granting injunctive relief where APHIS's action is "sufficiently limited" that "the risk of gene flow to [Plaintiffs'] crops could be virtually nonexistent." 130 S. Ct. at 2760. *Monsanto* signaled that if APHIS were to deregulate Roundup Ready alfalfa in remote geographic areas, isolated from non-genetically engineered plants, and under strict conditions, it would be "hard to see how [plaintiffs] could show that such a limited deregulation would cause them likely irreparable injury." *Id.* Our case concerns Roundup Ready sugar beets, not alfalfa, but in all other respects, APHIS's permitting of steckling plants appears to follow the Court's blueprint. Plaintiffs offer no evidence to the contrary.

On this record, therefore, we conclude that APHIS's permitting is "sufficiently limited" that "the risk of gene flow . . . could be virtually nonexistent." *Id.* The district court erred in finding that the steckling plants present an imminent risk of environmental harm to Plaintiffs.

As we have explained, Plaintiffs' allegations of harm hinge entirely on *later* stages of Roundup Ready sugar beet planting and production, which APHIS's

17

February 2011 decisions intend to authorize. In its November 2010 decision, the district court credited harms from those then-future activities, finding a likelihood of harm arising from the "entire cycle" of Roundup Ready sugar beet planting and production. However, the steckling permits alone do not authorize Intervenors to continue growing the juvenile plants beyond February 28, 2011, much less see them flower, produce seeds, or otherwise visit irreparable harm upon Plaintiffs. Indeed, the permits require the stecklings to be destroyed, absent new permit applications by Intervenors and further regulatory decisions by APHIS.

At the time Plaintiffs sought the preliminary injunction, none of the irreparable harms they sought to prevent were likely. Their alleged irreparable harms hinged on future APHIS decisions, and nothing prevented Plaintiffs from filing a new legal challenge if and when those decisions were made. The alleged irreparable harms are little more than an expression that "life finds a way." Michael Crichton, *Jurassic Park* 159 (Ballantine 1990). However, an invocation to chaos theory is not sufficient to justify a preliminary injunction. *Monsanto* warned against premature review of APHIS's regulatory actions under the Plant Protection Act. *See* 130 S. Ct. at 2759–61. Plaintiffs are unlikely to face irreparable substantive harm from the stecklings, and if a subsequent APHIS decision aggrieves them, they may challenge it and seek appropriate preliminary relief. *Id.*

18

at 2761. Under these circumstances, we conclude that injunctive relief "is not now needed to guard against any present or imminent risk of likely irreparable harm." *Id.* at 2760.

Because Plaintiffs have failed to show that they are "likely to suffer irreparable harm in the absence of preliminary relief," *Winter*, 129 S. Ct. at 374, we need not address the district court's analysis of the remaining elements of the preliminary injunction standard.

## VI

As we have noted, this appeal presents a thin slice of a larger litigation. Perhaps, in the end, the entire controversy will be resolved, and we can say that the "fair discourse hath been as sugar, [m]aking the hard way sweet and delectable." William Shakespeare, *Richard II*, act 2, sc. 3. Needless to say, given the course of the litigation, that is unlikely. However, on the narrow issue presented to us at this juncture, we hold that the district court abused its discretion in granting the preliminary injunction on the basis of Plaintiffs' NEPA claim. The Plaintiffs have failed to show a likelihood of irreparable injury. Biology, geography, field experience, and permit restrictions make irreparable injury unlikely.

Thus, without expressing any views on the merits of the ultimate issues in this case or other pending related litigation, we vacate the preliminary injunction, reverse, and remand for further proceedings consistent with this opinion.

**REVERSED.**

## Counsel

Robert J. Lundman, Department of Justice, Washington, D.C., for the federal defendants-appellants.

Richard P. Press, Latham & Watkins, L.L.P., Washington, D.C., for the intervenor defendants-appellants.

Paul H. Achitoff, Earthjustice, Honolulu, Hawaii, for the plaintiffs-appellees.