NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 26 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CORE-MARK INTERNATIONAL, INC., | No. 15-35705 |
| Plaintiff-Appellant, | D.C. No. 6:15-cv-00005-SEH |
| v. | |
| THE MONTANA BOARD OF LIVESTOCK, in its official capacity as head of the Montana Department of Livestock; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Submitted June 5, 2017**
Seattle, Washington

Before: FERNANDEZ, CALLAHAN, and IKUTA, Circuit Judges.

Appellant Core-Mark International, Inc. ("Core-Mark") challenges the

district court's dismissal of its action against Appellee Montana Board of

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

Livestock (the "Board") for lack of Article III standing.  We construe a district court's dismissal for lack of subject matter jurisdiction as a dismissal pursuant to a Federal Rule of Civil Procedure 12(b)(1) motion, *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010), which we review de novo, *see Wilson v. Kayo Oil Co.*, 563 F.3d 979, 980 (9th Cir. 2009) (per curiam).  Because we hold that Core-Mark has Article III standing to press its claims beyond the motion to dismiss stage, we vacate the district court's order and remand for further proceedings.

## I.

Under Montana law, milk processors, such as milk packagers,[1] are responsible for stamping milk cartons with sell-by dates.  *See* Admin. R. Mont. § 32.8.203.  A Montana regulation also requires that milk be stamped with a sell-by date of no more than 12 days from the date of pasteurization (the "Single Date Rule"), and that milk be removed from store shelves after that time (the "12 Day Rule").  Admin. R. Mont. § 32.8.202.  Failure to comply with the regulation

---

[1]     The term "packager" is not defined under Montana law.  The district court reasonably interpreted "packager" to fall under the umbrella of the term "producer," which is defined as "a person who produces milk for consumption in [Montana] and sells it to a distributor."  Mont. Code Ann. § 81-23-101(j).  Core-Mark also refers to a "processor" as one who pasteurizes, homogenizes, and *packages* milk.  We treat the term "processor" as being synonymous with the terms "producer" and "packager".

2

exposes processors, distributors, and retailers alike to criminal penalties. Mont. Code Ann. § 81-23-405.

Core-Mark is a Washington State-based milk distributor that purchases milk from processors and then delivers its product to independent grocery stores in Montana and other states. For several years, Core-Mark enjoyed an exemption to the Single Date Rule that allowed it to distribute milk cartons labeled with two dates: the 12-day date required under Montana law and the date reflecting the actual shelf life applicable in other Northwest states. However, in 2008, the Montana Department of Livestock[2] ("Department") rescinded the so-called Dual Date Exemption, causing Core-Mark to file suit in federal court challenging the constitutionality of the regulation.

Core-Mark dismissed its first federal suit in favor of an administrative proceeding, and then pressed its grievances in state court. After those efforts curdled, Core-Mark refreshed its claims in federal court, alleging in the district court that the Montana regulation violated (i) the equal protection and due process clauses of the Fourteenth Amendment, (ii) the commerce clause, (iii) the privileges and immunities clause, and (iv) the First Amendment. Core-Mark sought declaratory and injunctive relief against continued implementation and

---

[2] The Board of Livestock is the department head of the Department of Livestock. Mont. Code Ann. § 2-15-3101.

enforcement of the 12 Day Rule and Single Date Rule.

## II.

We must decide whether Core-Mark has Article III standing to raise its sundry constitutional claims. Core-Mark's burden is not an onerous one. At the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss [the court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted).

Core-Mark has Article III standing because it alleges actual and imminent economic harms that are concrete and particular to itself, fairly traceable to the challenged regulation, and which are likely to be redressed by an order enjoining the regulation's continued implementation and enforcement. *See id.* at 560–61.

***Injury-in-fact.*** Core-Mark alleges that the Montana regulation increases its costs "by forcing [it] to separately package, label, and inventory milk destined for sale in Montana and to make more frequent and smaller deliveries to [its] retail customers in Montana." At an evidentiary hearing on Core-Mark's motion for a preliminary injunction and temporary restraining order, Mark Huelskamp, the Spokane Division President of Core-Mark, also testified that the 12 Day Rule negatively affects Core-Mark's operations by requiring it "to make more deliveries

4

than necessary." As to the Single Date Rule, Mr. Huelskamp testified that it increases Core-Mark's costs by requiring it to "create[] two separate inventories." Under the Dual Date Exemption, by contrast, Core-Mark could carry one inventory and take advantage of operational efficiencies that resulted in "very little waste."[3]

These are concrete harms particular to Core-Mark that are "capable of proof at trial." *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 688–89 (1973). They are also actual and imminent, as they are occurring and will persist absent relief. *See Summers v. Earth Island Inst.,* 555 U.S. 488, 495–96 (2009).

***Traceability.*** Core-Mark's injuries are "fairly traceable to the challenged [regulation], and not the result of the independent action of some third party not before the court." *Defenders of Wildlife*, 504 U.S. at 560–61 (internal quotation marks and adjustments omitted). Core-Mark points to specific harms to its operations that are the direct result of the challenged regulation, such as the fact that the regulation requires separate inventories and packaging of milk that Core-Mark sells in Montana. That suffices to show causation for purposes of Article III standing.

---

[3] Core-Mark also has a cognizable injury based on the Montana statute holding milk distributors criminally liable for violating state regulations. Mont. Code Ann. § 81-23-405. Core-Mark need not violate the regulation and risk probable prosecution to have standing to challenge an allegedly unconstitutional law. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967).

***Redressability.*** Finally, Core-Mark sufficiently alleges that its injuries would likely be redressed by a favorable ruling. *See Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015). Granting Core-Mark's requested relief—an injunction against further implementation of the challenged regulation—is likely to result in streamlined business operations and lower costs, thereby mitigating its economic harms.

### III.

As a prudential matter, Core-Mark has standing only to assert its own rights. *See Powers v. Ohio*, 499 U.S. 400, 410–11 (1991). A litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal quotation marks omitted). We find that test easily met here, as all of the alleged constitutional violations pertain to Core-Mark's own right to engage in commercial speech and interstate commerce without unconstitutional interference.[4]

### IV.

Core-Mark has demonstrated Article III standing to press its constitutional claims at this stage of the litigation. We therefore **VACATE** the judgment of the

---

[4] In determining that Core-Mark has standing at the motion to dismiss stage of this litigation, we express no opinion on the merits of Core-Mark's constitutional claims.

district court and **REMAND** for further proceedings consistent with this decision.