In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 16-1667 & 16-1775

LIBERTARIAN PARTY OF ILLINOIS, *et al.*,

*Plaintiffs-Appellees.*

*v.*

CHARLES W. SCHOLZ, *et al.*,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12-CV-02511 — **Andrea R. Wood**, *Judge.*

ARGUED FEBRUARY 24, 2017 — DECIDED SEPTEMBER 22, 2017

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Illinois law prevents political parties from fielding candidates on election ballots unless they meet certain conditions. One condition is known as the full-slate requirement: If a party hasn't attained sufficient voter support in past elections, it must field candidates for all offices on the ballot in the political subdivision in which it wishes to compete. So in the 2012 election, the Libertarian Party of Illinois could field a candidate for county auditor in Kane

County only if it also proposed candidates for circuit clerk, recorder, prosecutor, coroner, board chairman, and school superintendent.

In this suit under 42 U.S.C. § 1983, the Libertarian Party argues that the full-slate requirement violates its right of political association under the First and Fourteenth Amendments. The district judge agreed and entered judgment invalidating the requirement. On appeal Illinois contends that the full-slate requirement is justified by its interests in political stability, preventing ballot overcrowding, and avoiding voter confusion.

We affirm the district court. The core of the fundamental right to political association is the right to band together in a political party to advance a policy agenda by electing the party's members to office. That necessarily includes the party's right to access the ballot and its candidates' right to appear on the ballot under the party banner. For a minor party and its nominees, Illinois's full-slate requirement extinguishes those rights unless the party fields candidates in races it may want no part of. This is a severe burden on fundamental constitutional rights, and Illinois hasn't offered a compelling state interest to justify it. Indeed, by incentivizing minor parties to manufacture frivolous candidacies as a means to an end, the full-slate requirement actually thwarts the interests Illinois invokes.

## I. Background

Like other states, Illinois classifies general-election candidates into three groups: those affiliated with an "established" political party, those affiliated with a "new" political party, and those running as independents. If a candidate is

affiliated with a party, whether established or new, the party name appears alongside the candidate's name on the ballot.

A party becomes established through a strong electoral performance. If a party's candidate in the most recent gubernatorial election received more than 5% of the vote, the party is established throughout the state. 10 ILL. COMP. STAT. 5/10-2 (2010). A party can also attain established status on a more limited basis. If its candidate (or candidates collectively) received more than 5% of the vote in a particular race in the most recent statewide election—for example, the race for Illinois Comptroller or Illinois Secretary of State—then the party becomes established for statewide elections. Likewise, if a party received more than 5% of the vote in a congressional or county race in the last election, it becomes established for congressional districts or for that county.[1] *Id.*

---

[1] The statute provides in part:

> A political party which, at the last general election for State and county officers, polled for its candidate for Governor more than 5% of the entire vote cast for Governor, is hereby declared to be an "established political party" as to the State and as to any district or political subdivision thereof. A political party which, at the last election in any congressional district, legislative district, county, township, municipality or other political subdivision or district in the State, polled more than 5% of the entire vote cast within such territorial area or political subdivision, as the case may be, has voted as a unit for the election of officers to serve the respective territorial area of such district or political subdivision, is hereby declared to be an "established political party" within the meaning of this Article as to such district or political subdivision.

A party that isn't established can access the ballot only as a new party. Attaining new-party status involves different hurdles. Unlike in any other state, new parties in Illinois must submit a full slate of candidates, one for each race in the relevant political subdivision.[2] *Id.* Additionally, the party must gather a minimum number of signatures on nominating petitions. For state offices, the number is the lower of 25,000 or 1% of votes cast in the preceding statewide election. For county offices, the number is 5% of the votes cast in the county's preceding election. *Id.* The new-party petition—with signatures and a full slate—must be filed between 134 and 141 days before the election. 10 ILL. COMP. STAT. 5/10-6 (2010).

Finally, the conditions to ballot access for independent candidates are similar to those for new parties except that the full-slate requirement *doesn't* apply. *See id.* § 5/10-3 (2010); *id.* § 5/10-6. So if a candidate's party meets the signature requirement before the petition deadline but doesn't field a full slate, the candidate can run as an independent.

In the 2012 election, the Libertarian Party attempted to nominate Julie Fox as its candidate for auditor of Kane County. But the Libertarian Party wasn't established, and it met neither the signature requirement nor the full-slate requirement necessary to receive the new-party designation. The Libertarian Party, Fox, and one of Fox's supporters sued

---

10 ILL. COMP. STAT. 5/10-2 (2010).

[2] The statute provides that a new-party petition "shall at the time of filing contain a complete list of candidates of such party for all offices to be filled in the State, or such district or political subdivision as the case may be, at the next ensuing election then to be held." *Id.*

Illinois election officials in federal district court under 42 U.S.C. § 1983, challenging the full-slate requirement.[3] (The defendants were sued in their official capacities, so we refer to them collectively as "Illinois.") Ruling on cross-motions for summary judgment, the judge held that the full-slate requirement violates the First and Fourteenth Amendments. Illinois appealed.

## II. Discussion

We review a summary judgment de novo. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56(a). Before addressing the merits, however, we take up a jurisdictional question of standing.

### A. Standing

The Constitution empowers federal courts to adjudicate cases or controversies. U.S. CONST. art. III, § 2, cl. 1. The Article III case-or-controversy limitation confines the federal judiciary to "the traditional role of Anglo–American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). The doctrine of standing enforces this limitation. *Id.* To establish standing, a plaintiff must demonstrate "(1) an injury in-fact; (2) fairly traceable to the defendant's action;

---

[3] The Libertarian Party challenges the full-slate requirement both as applied and facially. Because the requirement applies in the same way to all minor parties and their candidates, the suit is best understood as a facial challenge.

and (3) capable of being redressed by a favorable decision from the court." *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010).

Illinois argues that a judgment favorable to the Libertarian Party wouldn't redress its injury: The Party didn't meet the signature requirement, so it would have been barred from the 2012 ballot even in the absence of the full-slate requirement.[4] This argument misconceives the Libertarian Party's injury. It isn't simply that the Party couldn't run its candidate for county auditor in the 2012 election. It's that Illinois law imposes a burdensome condition on the Party's exercise of its right of political association; that is, the Party's injury is its inability to access the ballot *unless it fields a full slate of candidates*. That requirement persists and stands as an ongoing obstacle to ballot access.

In other words, the full-slate requirement raises the cost of ballot access to minor parties. It's a barrier to entry that operates directly on the Libertarian Party and is a continuing burden on its ability to field candidates for statewide and countywide office. As we've consistently held, that's an injury easily sufficient to support a suit for prospective relief. *See, e.g.*, *Krislov v. Rednour*, 226 F.3d 851, 857 (7th Cir. 2000) (holding that the plaintiffs had standing because being "required to allocate additional campaign resources … in itself can be an injury to First Amendment rights"); *Nader v.*

---

[4] Illinois doesn't argue that the controversy is moot, and it isn't. *See Storer v. Brown*, 415 U.S. 724, 737 n.8 ("The … election is long over … but this case is not moot, since the issues properly presented … will persist as the … statutes are applied in future elections. This is, therefore, a case where the controversy is capable of repetition, yet evading review.") (internal quotation marks omitted).

*Keith*, 385 F.3d 729, 736 (7th Cir. 2004) (observing that a candidate could challenge certain ballot-access restrictions before attempting to comply with them because "it was certain that *it would cost him more* to [comply with the restrictions] than if the challenged provisions were invalidated") (emphasis added); *Lee v. Keith*, 463 F.3d 763, 767 (7th Cir. 2006) (asserting jurisdiction over an independent candidate's suit because the challenged statutes "continue to restrict potential independent candidacies"). We proceed to the merits.

## B. Full-Slate Requirement

The First Amendment, which constrains state-government action by incorporation through the Fourteenth Amendment, "protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997). That right "means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes." *Williams v. Rhodes*, 393 U.S. 23, 31 (1968). Further, because "voters can assert their preferences only through candidates or parties," their right to vote "is heavily burdened if that vote may be cast only for major-party candidates at a time when other parties or other candidates are clamoring for a place on the ballot." *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (internal quotation marks omitted).

Laws restricting a party's ballot access thus burden two rights: "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their

votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Williams*, 393 U.S. at 30.[5]

We evaluate ballot-access restrictions by weighing

> "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 789).

Under this flexible standard, the level of scrutiny depends on the regulation at issue: the more severely it burdens constitutional rights, the more rigorous the inquiry into its justifications. *Id.* Nondiscriminatory restrictions that impose only slight burdens are generally justified by the need for orderly and fair elections. *Id.* at 433–34. But given the importance of the rights at stake, a severe restriction on a party's access to the ballot must be "narrowly tailored to serve a compelling state interest." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008) (quotation marks omitted).

---

[5] The Libertarian Party also challenges the full-slate requirement under the Equal Protection Clause of the Fourteenth Amendment. Because the requirement is unconstitutional on other grounds, we don't address this claim.

We have little difficulty concluding that the full-slate requirement severely burdens the First Amendment rights of minor parties, their members, and voters. As a condition for ballot access, the requirement forces minor parties to find and recruit candidates for races they want nothing to do with. In many instances the minor party must locate candidates for relatively obscure offices like county recorder or coroner. Moreover, in order to support candidates genuinely interested in winning (Illinois assures us that the full-slate requirement isn't meant to produce sham candidacies), a party must devote to each candidate the funding and other resources necessary to operate a full-fledged campaign. To take the example of Fox's candidacy for Kane County auditor, running a fully funded candidate for each Kane County office would have increased the Libertarian Party's costs sevenfold.

The full-slate requirement similarly burdens the right of a candidate to run as the standard bearer for his party. Although a party's failure to submit a full slate doesn't prevent the candidate from accessing the ballot as an independent, party-affiliated campaigns and independent campaigns "are entirely different and neither is a satisfactory substitute for the other." *Storer v. Brown*, 415 U.S. 724, 745 (1974). To give just one example, a party loyal who must run an independent campaign is denied the ability to quickly communicate information about his views and values through association with his party.

Relying on two Supreme Court cases, Illinois argues that parties and candidates have no right to appear next to each other on the ballot. *See Timmons*, 520 U.S. 351; *Wash. State Grange*, 552 U.S. 442. But those cases—neither of which

involved a regulation limiting ballot access—do not stand for that principle. In *Timmons* a minor party challenged Minnesota's antifusion statute, which prevented a person from running as the candidate for two parties in the same election. 520 U.S. at 353–54. The statute barred the minor party from nominating its chosen candidate because he'd already filed as a candidate for the state Democratic party. *Id.* at 354. The minor party alleged that the statute violated its political-association rights by denying it the ability to appear next to its candidate of choice on the ballot.

In rejecting that argument, the Supreme Court observed the obvious: A party never has the option to select just anyone as its candidate because a "particular candidate might be ineligible for office, unwilling to serve, or, as here, another party's candidate." *Id.* at 359. The Court thus emphasized that antifusion laws "do not directly limit the party's access to the ballot" but merely "reduce the universe of potential candidates who may appear on the ballot as the party's nominee only by ruling out those few individuals" already running with another party. *Id.* at 363. The full-slate requirement, on the other hand, *does* directly limit minor parties' ballot access. Far from entailing nothing more than a slight drop in the pool of candidates from which a party can choose, it prevents minor parties from affiliating with *anyone* on the ballot unless they mount numerous additional campaigns.

*Washington State Grange* was a forced-association case. The state of Washington adopted an initiative providing that primary-election ballots would identify each candidate with his self-designated party preference. 552 U.S. at 444. The law didn't allow a party to prevent a candidate from designating

it as his party preference. In a preenforcement facial challenge, the state Republican Party argued that the statute violated its associational rights by usurping its right to nominate its own candidates and by forcing it to appear on the ballot alongside candidates it didn't approve. *Id.* at 448. The Supreme Court upheld the statute, reasoning that Washington might print the ballots in a manner that clarified the one-way nature of the party-preference designation. *Id.* at 455–56. That possibility was enough to defeat the facial challenge. *Id.* at 457. But the Court expressly declined to consider any ballot-access implications the statute might carry because those issues were outside the question presented. *Id.* at 458 n.11. Neither *Timmons* nor *Washington State Grange* questioned the long-recognized right of political parties to access the ballot.

Because the full-slate requirement—the only one of its kind in the country—severely burdens the First Amendment rights of minor parties and their members, it must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289 (1992). Illinois invokes three state interests in defense of the requirement: promoting political stability, avoiding overcrowded ballots, and preventing voter confusion. *See Storer*, 415 U.S. at 732 (affirming the validity of those objectives). Illinois emphasizes that these interests are served by reserving the ballot for parties with at least a modicum of public support.

No one doubts that Illinois's stated interests are compelling in the abstract, but the full-slate requirement doesn't advance them. By creating unwanted candidacies, the requirement *increases* political instability, ballot overcrowding, and voter confusion. As Illinois would tell it, the re-

quirement exogenously sorts minor parties into two camps: those that have a bench of ready candidates for every race and those that don't. But like other laws, the full-slate requirement shapes the behavior of those it binds. Whatever its aim, the requirement forces a minor party to field unserious candidates as a condition of nominating a truly committed candidate. The Libertarian Party, for example, might have filled the six other Kane County slots with Fox's friends or relatives.

In reality, then, the full-slate requirement does not ensure that only parties with a modicum of support reach the ballot. Instead it ensures that the only minor parties on the ballot are those that have strong public support *or* are willing and able to find enough frivolous "candidates" to comply with the law. To be sure, the full-slate requirement—like any regulation that increases the cost of ballot access—reduces the likelihood that a feeble party will secure a ballot position. But Illinois's interest in reserving the ballot for strong parties is directly served by the signature requirement. That regulation—which at 5% of votes cast in the preceding election is restrictive in its own right—suffices to winnow out weak parties. Finally, the full-slate requirement doesn't prevent ballot overcrowding or voter confusion; to the contrary—it clutters the ballot with numerous candidates who wouldn't otherwise run and who may or may not be sincerely interested in public office.

The full-slate requirement severely burdens fundamental constitutional rights and is not narrowly tailored to a compelling state interest. We AFFIRM the judgment of the district court.