JUSTICE NELSON,
concurring in part and dissenting in part.
¶46 I concur in the narrow result of the Court’s decision, holding that MTU has standing in the Water Court vis-a-vis the Big Hole River basin water rights adjudication. Respectfully, however, I dissent from two facets of the Court’s analysis.
¶47 First, while I agree that justiciability requirements (standing, in particular) apply to the Water Court, I do not agree that this is a matter of “common law.” Second, while I agree that MTU has standing under the governing statutes, I do not agree with the breadth of standing the Court has construed those statutes to accord. I address these two points in turn.
Justiciability
¶48 The Supreme Court has held that courts created under Article III of the United States Constitution are limited in their exercise of judicial power to the adjudication of “cases” and “controversies.” Flast v. Cohen, 392 U.S. 83, 94-95, 88 S. Ct. 1942, 1949-50 (1968). This Court has held that courts created under Article VII of the Montana Constitution are subject to the same limitation. Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc., 2009 MT 362, *93 ¶ 22, 353 Mont. 201, 219 P.3d 881; Olson v. Dept. of Revenue, 223 Mont. 464, 469-70, 726 P.2d 1162, 1166 (1986). The so-called “common law rules of standing” to which the Court refers in today’s Opinion are, in reality, criteria designed to enforce this case-or-controversy limitation. Heffeman v. Missoula City Council, 2011 MT 91, ¶¶ 29-33, 360 Mont. 207, 255 P.3d 80; Summers v. Earth Island Inst., 555 U.S. 488, 129 S. Ct. 1142, 1148-49 (2009). Ripeness, mootness, advisory opinion, and political question are other such justiciability doctrines which serve to assure that the court has before it a proper “case” or “controversy.” Greater Missoula, ¶ 23; Flast, 392 U.S. at 95, 88 S. Ct. at 1950.
¶49 Why the Water Court is a court to which the justiciability doctrines apply is a threshold question left unaddressed by the Court’s Opinion. Simply being denominated a “court” does not automatically bind a tribunal to the case-or-controversy restrictions. An example of this can be seen in the District of Columbia Superior Court and the District of Columbia Court of Appeals (which are distinct from the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit). Congress created these two “Article I courts” pursuant to Article I, Section 8, Clause 17 of the United States Constitution. Although they exercise federal judicial power with respect to local laws, the District of Columbia courts are not bound by the strictures of Article III. Palmore v. United States, 411 U.S. 389, 93 S. Ct. 1670 (1973); McIntosh v. Washington, 395 A.2d 744, 749 n. 10 (D.C. 1978). That includes the case-or-controversy limitation. Lee v. Dist. of Columbia Bd. of Appeals and Review, 423 A.2d 210, 216 n. 13 (D.C. 1980). Thus, while these courts have applied justiciability requirements for policy reasons, Atchison v. Dist. of Columbia, 585 A.2d 150, 153 (D.C. 1991), they have understood that those requirements may be legislatively overridden, Grayson v. AT&T Corp., 15 A.3d 219 (D.C. 2011) (addressing whether amendments to the D.C. Code eliminated the court’s self-imposed standing requirement).[1]
*94 ¶50 The fact that the Water Court performs an adjudicatory function is also not dispositive. In Montana, there are various agencies that exercise a “quasi-judicial” function, which means “an adjudicatory function... involving the exercise of judgment and discretion in making determinations in controversies.” Section 2-15-102(10), MCA; see e.g. §§ 2-15-1704(5) (Board of Labor Appeals), -1706(3) (Human Rights Commission), -1819(5)(a) (Board of Research and Commercialization Technology), -2029(l)(a) (Public Safety Officer Standards and Training Council), -2502(8) (Transportation Commission), -3105(4) (Board of Milk Control), -3303(4) (Board of Oil and Gas Conservation), -3402(5) (Fish, Wildlife, and Parks Commission), MCA. These bodies hold hearings; evaluate and pass on facts; interpret, apply, and enforce existing rules and laws; grant or deny privileges, rights, or benefits; award compensation; and order action or abatement of action. Section 2-15-102(10), MCA. Yet, while these proceedings are “judicial” and “adjudicatory” in nature, I am aware of no case in which we have required the parties participating in the proceedings to satisfy the criteria of constitutional standing, ripeness, mootness, and the like.
¶51 The error in the Court’s Opinion, therefore, is the suggestion that our justiciability doctrines are based in common law. This poses the danger of importing these doctrines wholesale into contexts for which they were not intended, or the risk of misapplying the doctrines due to a lack of understanding of their function and purpose. Standing requirements, such as the showing of an injury to a property or civil right (Opinion, ¶ 27), were adopted to enforce the case-or-controversy limitation on a particular class of courts. Hence, the applicability of those requirements depends, obviously, on whether the given tribunal is limited, by the constitutional or statutory provision establishing it, to entertaining only “cases” and “controversies.”
¶52 Unlike Article III, Section 2, Clause 1 of the United States Constitution, there is no provision in the Montana Constitution limiting the judicial power of the state to specific classes of “cases” and “controversies.” The only express case-or-controversy limitation is in the grant of jurisdiction to the district courts under Article VII, Section 4. See Olson, 223 Mont, at 469-70,726 P.2d at 1166 (observing that the language “all civil matters and cases at law and in equity” in Article *95 VII, Section 4(1) “has been interpreted as embodying the same limitations as are imposed by federal courts under the Article 3 ‘case or controversy’ provision of the United States Constitution”). This Court is not expressly limited to hearing only “cases” and “controversies.”[2] Mont. Const, art. VII, § 2(1). Nor are the justice courts, which have “such original jurisdiction as may be provided by law” (except trial jurisdiction in felony cases). Mont. Const, art. VII, § 5(2). The Constitution allows for the creation of “other courts as may be provided by law.” Mont. Const, art. VII, § 1. But these courts are also not expressly limited to hearing only “cases” and “controversies.” Accordingly, if such a limitation applies to all Montana courts-and we have suggested this on several occasions, see Greater Missoula, ¶ 22, and cases cited therein-then it must be implicit in the term “judicial power” as that term is used in Article VII, Section 1.
¶53 I need not delve into that issue here, however, as it is apparent from the statutes establishing the water divisions and the water judges that the Water Court was set up as a specialized version of the district courts. There are four water divisions established to adjudicate water rights. Sections 3-7-101, -102, MCA. The boundaries of the four water divisions are formed by the natural divides between drainages within the state. Section 3-7-102, MCA. Each water division is presided over by a water judge. Section 3-7-101, MCA. Each water judge must be a district court judge or a retired district court judge of a judicial district wholly or partly within the water division. Section 3-7-201(1), MCA. “A water judge, when presiding over a water division, presides as district court judge in and for each judicial district wholly or partly within the water division.” Section 3-7-201(3), MCA. The activities of the water judges are supervised by this Court. Section 3-7-204(1), MCA; cf. Mont. Const, art. VII, § 2(2) (“[The supreme court] has general supervisory control over all other courts.”).
¶54 If the Water Court is effectively a specialized district court assigned to make water right determinations within its jurisdiction-and, in light of the foregoing statutes, I conclude that it is-then it follows that the Water Court is limited, like district courts, to adjudicating only cases and controversies. As such, MTU must *96 satisfy constitutional standing requirements (a past, present, or threatened injury to a property or civil right that would be alleviated by successfully maintaining the action) and prudential standing requirements (an injury that is distinguishable from the injury to the public generally, though not necessarily exclusive to the plaintiff).[3] Heffernan, ¶ 33. In this regard, I note that MTU alleges that Claimants’ water right claims, as set forth in the decree, will injure not only MTU itself, but also its members. See Opinion, ¶¶ 5, 33. In other words, MTU asserts the rights of its members. See Heffernan, ¶¶ 42-46 (discussing the doctrine of associational standing).
¶55 For the sake of brevity, I will not engage in an analysis of how MTU has satisfied the foregoing standing criteria. I agree with the result of the Court’s decision on this point, as well as much of the Court’s rationale. The purpose of this discussion is not to address whether MTU has met constitutional and prudential standing requirements. It is to explain, rather, why MTU must meet those requirements in the first place. As discussed, the reason is not due to generally applicable “common law rules” as the Court suggests, but because the Water Court is subject to the same case-or-controversy limitations as the district courts.
Statutory Construction
¶56 Besides the case-or-controversy requirements, there are statutory restrictions on who may appear before the Water Court. MTU contends that to the extent the statutory standing rules preclude it and its members from obtaining a remedy for alleged injuries, the statutes violate Article II, Section 16 of the Montana Constitution. Since I conclude that MTU has standing under the statutes, however, I do not reach that issue.
¶57 At the outset, I agree with the Court’s holding (under Issue 1) regarding the Water Court’s application of § 85-2-223, MCA. In addition, I agree with the Court’s conclusion (also under Issue 1) that while the Legislature has expressly identified the persons who have standing to file an objection to an application for a new water right, § 85-2-308(3), MCA, there is no statutory restriction on who is entitled to file an objection to a claim of an existing water right. Accordingly, I focus below on my disagreement with the Court’s interpretation *97 (under Issue 2) of § 85-2-233, MCA, which identifies the persons entitled to a hearing on an objection.
¶58 Section 85-2-233(l)(a)(iii), MCA, states, in relevant part, that “[flor good cause shown ..., a hearing must be held before the water judge on any objection to a temporary preliminary decree or preliminary decree by ... any person within the basin entitled to receive notice under 85-2-232(1).” The persons entitled to receive notice include any “interested persons who request service of the notice from the water judge.” Section 85-2-232(l)(f)(iii), MCA. “Good cause shown” means “a written statement showing that a person has an ownership interest in water or its use that has been affected by the decree.” Section 85-2-233(l)(b), MCA.
¶59 At issue here is the “good cause” requirement. The Court reasons that because the State owns the waters of Montana and holds them in public trust for the benefit of its people, and because MTU’s members have “personal environmental and recreational interests” in the Big Hole River basin, MTU therefore has a sufficient “ownership interest” in water or its use to demonstrate “good cause” for a hearing on MTU’s objections. Opinion, ¶¶ 33-34. In so doing, the Court effectively reads the “good cause” requirement out of the statutory scheme. The Court holds that where a party has met all “common law” standing requirements and has satisfied the minimal statutory requirements of requesting notice and filing an objection, that is sufficient and the party is entitled to a hearing. The Court rejects the notion that such party must make any further showing. The statutory requirement of “good cause” either is not at issue or is simply subsumed into the party’s request for notice and filing of an objection. I do not believe this approach is faithful to the intent of the statute.[4]
¶60 The Court has used the fact that “[t]he State holds title to the surface waters of Montana for the benefit of its citizens” (Opinion, ¶ 30) to drain the term “ownership” in the statute of any force or relevance. Indeed, according to the Court’s reasoning in ¶ 34, a person has a “sufficient ownership interest” if (1) he or she is a citizen of Montana and (2) he or she alleges a personal environmental and recreational interest in the particular water basin. While the Court claims this approach does not render the word “ownership” *98 meaningless or expand the right to be heard on an objection to every person in the state (Opinion, ¶ 35), it is difficult to perceive any real parameters on the Court’s construction. And the Court, pointedly, chooses not to set any sideboards on the language it uses. Arguably, a resident of Libby planning a fishing trip to the Big Hole River has a personal environmental and recreational interest in that basin. So does a resident of Wolf Point who is planning a camping trip to the area. Likewise, high school students in Broadus who intend to study insect life along the shores of Montana’s streams have a personal environmental and recreational interest in the river. And since the State holds the river’s water in trust for all of these individuals, it appears they are all entitled to hearings on their objections. In effect, the Court has transformed the adjudication of water rights into a broad public participation process-a result not contemplated by the statutory scheme.
¶61 In my view, “the State’s ownership of the waters of Montana” (Opinion, ¶ 34) is beside the point. The statute refers to “an ownership interest in water or its use.” Section 85-2-233(l)(b), MCA (emphasis added). While it is not immediately clear what this means, what is clear is that the Legislature could not have meant an ownership interest premised on the fact that the State owns the waters on behalf of its citizens. Otherwise, there would have been no need to use the modifier “ownership”; the Legislature could have simply referred to any Montana citizen who has “an interest in water or its use” and omitted the term “ownership.” Surely, however, the Legislature recognized that the State owns the waters as a matter of constitutional decree and that citizens only “appropriat[e]” the waters for beneficial uses. Mont. Const, art. IX, § 3(3). Hence, it is evident that “ownership interest” must refer to something other than “the State’s ownership of the waters of Montana.”
¶62 Indeed, MTU concedes that “an ownership interest in water” refers to “a water right claim.” The question, therefore, is what “or its use” refers to. Addressing this question, MTU points out that because a water right is a usufructuary right-i.e., “[a] right for a certain period to use and enjoy the fruits of another’s property without damaging or diminishing it, but allowing for any natural deterioration in the property over time,” Black’s Law Dictionary 1684 (Bryan A. Garner ed., 9th ed., Thomson Reuters 2009) (emphasis added)-it would be redundant for the statute to mean “an ownership interest in water or [an ownership interest in] its use,” as these two clauses mean the same thing. Being usufructuary, an ownership interest in water is an *99 ownership interest in its use. Thus, MTU posits that “or its use” has independent meaning in light of the statutory context and refers to an interest in the use of water not premised on a water right claim. I agree.
¶63 The Water Court is required to provide notice of a temporary preliminary decree or preliminary decree not only to each person who has filed a claim of existing water right within the decreed basin, but also to any “other interested persons who request service of the notice.” Section 85-2-232(l)(b), (f)(iii), MCA. Clearly, participation in the adjudication at the preliminary decree stage by persons besides those claiming water rights is contemplated. Indeed, why would “other interested persons” be entitled to notice if they did not also have the corresponding right to participate meaningfully in the adjudication and be heard on objections? Moreover, “any party who is affected by the decision and who participated in the matter” is allowed to appeal an interlocutory ruling by the Water Court on a question of law. Section 85-2-235(3), MCA. Again, the statutory scheme contemplates the involvement of individuals besides the water right claimants.
¶64 It seems to me that the critical limiting language of the statute is to be found in the phrase “that has been affected by the decree.” See § 85-2-233(l)(b), MCA (“ £[G]ood cause shown’ means a written statement showing that a person has an ownership interest in water or its use that has been affected by the decree.” (emphasis added)). In context, this language indicates a personal and concrete (rather than conjectural) injury flowing from the decree. This interpretation is consistent with the aforementioned appeal statute, which refers to parties who are “affected” by the court’s decision. Section 85-2-235(3), MCA. It is also consistent with the statutory counterparts governing new water rights (as opposed to existing water rights, which are at issue here). These statutes provide that “[a] person has standing to file an objection ... if the property, water rights, or interests of the objector would be adversely affected by the proposed appropriation,” § 85-2-308(3), MCA (emphasis added), and that a contested case hearing shall be held on valid objections, § 85-2-309(1), MCA.
¶65 In light of the foregoing, I would hold that a demonstrated interest in the use of the water, coupled with a personal and concrete injury resulting from the decree, is necessary to establish “good cause” tmder the statute. Here, MTU has met this requirement in light of the organization’s restoration efforts and accomplishments in the Big Hole River basin, its expenditures to achieve those ends, and the specific *100 and concrete harms that will result from unsupported large water right claims. See Opinion, ¶¶ 5, 8.
Conclusion
¶66 In sum, I agree that the decision of the Water Court must be reversed. MTU has satisfied constitutional, prudential, and statutory standing requirements. But I disagree with the notion of “common law rules of standing,” and I also disagree with the Court’s broad construction of § 85-2-233(l)(b), MCA. The net result of the Court’s analysis is to expand the recognized parameters of standing beyond sustainable limits.
¶67 For the reasons set forth, I concur in the result of the Court’s decision but dissent from the Court’s analysis under Issue 2.

 The Supreme Court’s jurisprudence on the subject of non-Article III courts and administrative agencies that exercise the federal judicial power has been characterized aptly as “not admit[ting] of easy synthesis,” N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 91, 102 S. Ct. 2858, 2881 (1982) (Rehnquist & O’Connor, JJ., concurring in the judgment), and “one of the most confusing and controversial areas of constitutional law,” id. at 93,102 S. Ct. at 2883 (White, J., Burger, C.J., & Powell, J., dissenting). Insightful discussions of this subject are provided in Paul M. Bator, The Constitution as Architecture: Legislative and Administrative Courts Under Article III, 65 Ind. L. J. 233 (1990), and James B. Pfander, Article I Tribunals, Article III Courts, *94 and, the Judicial Power of the United States, 118 Harv. L. Rev. 643 (2004). The ability of the Montana Legislature to vest judicial power in non-Article VII tribunals and agencies presents an equally difficult question. I do not reach that question here, however, as it is not necessary to do so for reasons that will become clear.

 There was an “all cases at law and in equity” provision in the 1889 Constitution concerning the jurisdiction not only of the district courts, but also of the Supreme Court. See Mont. Const, art. VIII, §§ 3, 11 (1889). Thus, some of our cases under the 1889 Constitution state that this Court was likewise limited to cases and controversies. See e.g. Chovanak v. Matthews, 120 Mont. 520, 525-26, 188 P.2d 582, 584-85 (1948). There is no such express limitation in the 1972 Constitution, however.

 We noted in Heffernan, ¶ 34, that the Legislature may modify or abrogate prudential standing requirements. But MTU has not raised that point here, and I have thus assumed that the requirement of a distinguishable injury is still required.

 Incidentally, the Court relies on the Water Right Adjudication Rules and various precedents of this Court and the Water Court illustrating the importance of broad rights of participation in water adjudications. Yet, though these authorities may be evidence of what the Judiciary believes is good policy, they are not evidence of what the Legislature intends. To discern the latter, we must look to the statutes themselves.