[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13457

_____

D.C. Docket No. 1:07-cv-00018-MP-GRJ

AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC.,

Plaintiff - Appellee,

versus

DIXIE COUNTY FLORIDA,

Defendant - Appellant,

_____

FOUNDATION FOR MORAL LAW,
WALLBUILDERS, INC.,
AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE,

Amici Curiae.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 15, 2012)

Before WILSON, KRAVITCH and EDMONDSON, Circuit Judges.

WILSON, Circuit Judge:

The dispute underlying this appeal concerns the constitutionality of a large religious statue that is located directly outside the courthouse in Dixie County, Florida (the "County"). The American Civil Liberties Union of Florida, Inc. ("ACLU") brought suit against the County, arguing that such a monument violates the First Amendment's Establishment Clause. The County moved for summary judgment on the ground that John Doe, the ACLU member through whom the ACLU claimed standing, could not demonstrate an actual injury that he had suffered as a result of the display. The district court denied the motion. The ACLU later moved for summary judgment, which the district court granted. We find that due to a material conflict in the evidence, an evidentiary hearing on the issue of standing was merited. We therefore remand so that such a hearing can be conducted.

## I.

### A.

In Dixie County, Florida, a five-foot tall statue of the Ten Commandments flanks one entrance to the County courthouse. The statue is centrally situated on top of the courthouse steps and is clearly visible from the road. It was donated and

erected by a private citizen in 2006 with the approval of the County Board of Commissioners.

John Doe resides primarily in North Carolina. He has never lived in the County, nor does he have any ties to property there, but Doe and his wife own a winter home in nearby Levy County. Their winter home is not currently for sale. Doe developed an interest in possibly purchasing land in the County because the County's zoning rules allow residents to live in a recreational vehicle ("RV") on their property. He and his wife had been contemplating moving from their Levy County property to a new location that permitted such a practice. In 2004, Doe made an offer on a parcel of land in the County. That offer was declined, but Doe continued his search for property. On January 24, 2007, Doe made a trip to the County assessor's office to investigate the real estate records for a different property in which he had an interest. The assessor's office, like all of the County's essential local government offices, is located in the courthouse. Although Doe had been in the vicinity of the courthouse on previous occasions, this visit marked his first time entering the building.

While at the courthouse, Doe caught sight of the Ten Commandments monument. He had not been aware of the statue's existence prior to January 24, 2007, and the experience of seeing the statue was a negative one for Doe. Doe

3

took offense at the display and felt shocked.  However, after taking time to photograph the statue using his cell phone, Doe was able to resume his inspection of the property records.  Ultimately, Doe was able to obtain from the assessor's office all of the information that he had been seeking regarding the parcel.  However, he did not end up purchasing the property.  In fact, to this date Doe has not purchased *any* land in the County.  A question relevant to this appeal is: why not?

## B.

The ACLU filed this suit against the County in February 2007, and in September 2007, Doe was deposed.  During his deposition, Doe was questioned about the property that he had been investigating during his January 24, 2007 visit to the County courthouse:

> Q: Did you ultimately end up purchasing th[at] property?
> A: No.
> Q: Why not?
> A: *Because of the Dixie County government probably.  The display of the monuments, the monument.*
> Q: Okay. Explain that to me a little bit more. I'm not sure I understand.
> A: I was somewhat offended by the monument being there.
> Q: Was there *any other reason* that you decided not to purchase this property in Dixie County?
> A: *I found other things I was offended by.*

On October 10, 2007, the County moved for summary judgment, arguing

4

that Doe lacked standing, and thus the ACLU lacked standing.  The ACLU replied, attaching to its response an affidavit prepared by Doe.  Doe stated in the affidavit that when he saw the monument at the courthouse, he was "deeply disturbed that the county openly embraced religious doctrine."  Although disturbed by the monument, Doe continued his investigation of the property and found that there were no restrictions against living in an RV on the land.  Doe stated: "At this point I became very disheartened because were it not for the county's religious display at the courthouse, the only thing left to negotiate was the price [of the property]."  He also claimed in the affidavit that, "[w]ere it not for the presence of the Monument on the Dixie County Courthouse steps, we would have continued to look for . . . property in Dixie County . . . and we would do so again immediately if the Monument were removed."  On August 8, 2008, the district court denied the County's motion.  The court found that Doe had suffered an injury requisite for standing because "but for the display, [he would] be looking for or already have purchased property in the County."

In October 2009, the ACLU moved for summary judgment on the merits. The district court granted the motion, and the County appeals.

## II.

### A.

5

We review *de novo* a district court's ruling on a motion for summary judgment, including any determination made regarding a plaintiff's standing.  *See Glassroth v. Moore*, 335 F.3d 1282, 1291–92 (11th Cir. 2003).  Standing is a jurisdictional inquiry, and a "party invoking federal jurisdiction bears the burden" of establishing that he has standing to sue.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992).  Because standing is not merely a pleading requirement, "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."  *Id.*  When considering a "factual challenge" to standing in a motion for summary judgment, "[a]s with any summary judgment determination, we look beyond the complaint, to the 'depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.'"  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  We may only grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a mater of law."  Fed. R. Civ. P. 56(a).

The existence of standing is crucial because we as a federal court are constitutionally bound to *only* entertain arguments that we have been given the

6

authority to decide:

> The judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts.  The power to declare the rights of individuals and to measure the authority of governments . . . "is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy." *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345(1892).  Otherwise, the power "is not judicial . . . in the sense in which judicial power is granted by the Constitution to the courts of the United States." *United States v. Ferreira*, 13 How. 40, 48 (1852).
>     As an incident to the elaboration of this bedrock requirement, this Court has always required that a litigant have "standing" to challenge the action sought to be adjudicated in the lawsuit.

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S. Ct. 752, 758 (1982).

An organization has standing to bring an action on its members' behalf if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (1977).  In this case, the element of the ACLU's standing that is in question is whether its member Doe would have standing in his own right to bring this suit.  In order for Doe to satisfy that requirement, he must fulfill three basic elements of the "irreducible constitutional

7

minimum" for standing. *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136. First, Doe must "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of." *Id.* Third, it must be likely, rather than merely speculative, that a favorable decision by the court will actually remedy Doe's injury. *Id.*

## B.

The issue of standing was raised by the County in its motion for summary judgment.[1] At the time that motion was filed, Doe's affidavit and deposition were in conflict regarding a fact essential to the standing determination. The deposition asserted that there were "other things" that offended Doe at the courthouse and contributed to his disinclination to pursue a property search. However, the

---

[1] When ruling on the County's summary judgment motion, the district court stated, "[f]or the purposes of ruling on a *motion to dismiss* for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." (emphasis added). The district court then proceeded to cite heavily to Doe's affidavit without mentioning any testimony from his deposition pre-dating that affidavit. This was in error. The standard for evaluating a motion for summary judgment is different than that for a motion to dismiss, and summary judgment requires a district court to look at all the evidence—"beyond the complaint, to the depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Bochese*, 405 F.3d at 976 (quotation marks omitted) (evaluating a summary judgment motion based on lack of standing). However, our review is *de novo*, so we need not focus on the district court's mistake; we are free to make our own review.

8

affidavit avers that the monument alone was the but-for cause.  Although the fact that Doe's later-filed affidavit shores up his assertion of standing engenders suspicion as to its veracity, we are required to rely on the affidavit at the summary judgment stage of proceedings.  *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000) (stating that when a court evaluates a summary judgment motion asserting a lack of standing, the facts set forth by the plaintiff will be "taken to be true").  The affidavit—taken as true, *see id.*—raises a dispute as to whether Doe might have actually been injured, so denial of the County's motion asserting a lack of standing was proper *at that point in the proceedings*.  The error emerged when the district court implicitly ratified its finding of standing—a finding resolved on a summary judgment posture and based on the content of the affidavit alone—by failing to address standing again prior to or during its final ruling in the case.

If an affidavit differs from the statements made in a deposition, "the two in conjunction may disclose an issue of credibility."  *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (internal quotation marks omitted).  Under such circumstances, a district court is not free to credit one piece of evidence and ignore the other; instead, it should hold an evidentiary hearing in order to make credibility findings.  *Bischoff*, 222 F.3d at 881.  We find that such an issue of credibility exists regarding Doe's inconsistent testimony.  Yet when the district

9

court ruled on the ACLU's motion, it made a final disposition of the case that implicitly relied on crediting the affidavit and ignoring the deposition testimony that "other things" may have deterred Doe from pursuing his property search. Ignoring that deposition testimony was improper; the district court lacked the power to make a credibility determination absent a prior evidentiary hearing.

C.

Standing is crucial. The Supreme Court has called it "perhaps the most important of [the jurisdictional] doctrines." *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324 (1984).

> Before rendering a decision . . . every federal court operates under an independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based; and this obligation on the court to examine its own jurisdiction continues at *each stage* of the proceedings.

*Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 759 (11th Cir. 1991) (emphasis added). An essential part of standing is that the plaintiff suffered an injury that is "concrete and particularized," not "conjectural" or "hypothetical," *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136, but the conflicts in the evidence here prevent us from determining if Doe experienced such an injury.

Doe is not a resident of the County, nor does he have any legal or business obligations that would require him to visit the County. His sole source of

potential injury in this case springs from his interest in possibly buying land in the County.  Doe contends that the offensiveness of the statue has imposed a burden on him to avoid the County courthouse and to abandon his property search in the County; he alleges that this burden is tantamount to an injury.

The ACLU points to *Glassroth*, 335 F.3d 1282, and *ACLU v. Rabun Cnty. Chamber of Commerce, Inc.*, 698 F.2d 1098 (11th Cir. 1983) (per curiam), to support its proposition that Doe has suffered an injury.  In *Glassroth*, the plaintiffs were lawyers who were offended by a monument in their state's judicial building and were subjected to viewing it in the course of their professional duties.  335 F.3d at 1288.  The plaintiffs began avoiding the building which they had previously frequented.  *Id.*  We found that the plaintiffs had "altered their behavior as a result of the monument" and that a favorable decision would likely redress their injuries.  *Id.* at 1292.  In *Rabun*, the plaintiffs were Georgia residents who regularly camped and made use of public parks "maintained by the State of Georgia."  698 F.2d at 1107.  When a cross was erected on Georgia state park land, the campers were forced to discontinue their use of this state-supplied amenity.  *Id.*  We found this injury sufficient to confer standing.  *Id.* at 1108.

Those cases are factually distinguishable from the present case.  Doe indicated in his deposition that *other factors*, in addition to the monument,

11

deterred him from purchasing land in the County.[2]  Therefore, it is uncertain whether foregoing his real estate search constitutes an "injury" of the type that satisfies standing requirements and whether the monument was the real cause of that alleged "injury."  The existence of alternative or additional reasons for Doe's abandonment of his search for property in the County could render Doe's injury speculative—more "hypothetical" than "actual."  *See Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136.  Additionally, if other factors caused Doe's injury, that would undermine the claim that his injury is redressable by removal of the monument.

### III.

Doe's affidavit—which is suspect, given that it seems designed to strengthen Doe's standing claim—is inconsistent with his deposition.  Because this conflicting evidence must be resolved in order to determine whether Doe has standing, we vacate the district court's grant of summary judgment on the merits and remand to the district court to hold an evidentiary hearing and determine what testimony to credit.  *See Bischoff*, 222 F.3d at 881 ("[I]n a case where the evidence relating to standing is squarely in contradiction as to central matters and requires credibility findings, a district court cannot make those findings simply by relying

---

[2] Even absent consideration of Doe's deposition testimony, it is not clear that these cases are applicable to the facts of Doe's case.

12

on the paper record but must conduct a hearing at which it may evaluate the live testimony of the witnesses.") (emphasis omitted).

**VACATED AND REMANDED.**

EDMONDSON, Circuit Judge, concurring in part and dissenting in part.


This appeal is about standing and about Article III "Cases" and "Controversies."

I agree that the grant of summary judgment on the merits must be vacated. I dissent about a remand for an evidentiary hearing or for any other proceeding, except dismissal. I agree with much of what Judge Wilson has written; but I think Plaintiff -- as a matter of law -- has already failed to show standing and is unentitled, in this case, to another chance or to more proceedings in a federal court.

Plaintiff American Civil Liberties Union of Florida, Inc. (the "ACLU") challenges a stone monument to the Ten Commandments that stands on the front steps of the courthouse in Dixie County, Florida (the "County"); Plaintiff says the monument violates the Establishment Clause of the First Amendment. Plaintiff claims standing based on the standing of one of its members, John Doe. John Doe does not reside in Dixie County.

I believe Plaintiff lacks constitutional standing to bring this civil action in federal court; I would vacate the judgment for Plaintiff and remand to the district court for dismissal now based on lack of jurisdiction.

14

I.

A.

Before setting out the facts that are material to me in this case, I discuss what evidence we may properly consider to be in the record on appeal. In this civil action, Defendant's lawyers took Doe's deposition in September 2007 and, about one month later, moved for summary judgment based on Plaintiff's lack of standing. Parts of, but not all of, the transcript of Doe's deposition were before the district court when that court decided this case.

Our written instructions to parties who file appeals in this Court require that "[w]hen any portion of a witness' testimony (deposition or transcript) is cited in the argument section of [the appellant's] brief . . . , the entire deposition . . . must be provided" to the Court. Defendant submitted the full Doe deposition transcript to this Court to be part of the record on appeal. Plaintiff moved to strike the transcript of Doe's deposition, although it is Doe's supposed harm that is the sole basis (if any) for Plaintiff's standing. No one has contended that the pertinent transcript is not authentic. The Court denied the motion to strike.

As Article III judges, we owe certain duties directly to the Constitution. We

15

have "an independent obligation to examine [our] own jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'" FW/PBS, Inc. v. City of Dallas, 110 S. Ct. 596, 607 (1990) (citation omitted).

I would have us satisfy this independent obligation by considering now the record, including Doe's full deposition. For background, see Ouachita Watch League v. Jacobs, 463 F.3d 1163, 1170-71 (11th Cir. 2006) (reversing the district court's summary judgment standing decision because declarations, not submitted to the district court, but submitted on appeal, indicated that the plaintiff-association's members had been injured by environmental damage to forests that they regularly used); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1554-55 (11th Cir. 1989) (using affidavits, not seen by the district court, but submitted on appeal by the plaintiffs, to affirm a decision for the defendants -- in a removal case -- that diversity jurisdiction existed). I would accept the full transcript of Doe's deposition because standing is an important jurisdictional doctrine that we must examine before deciding a case on the merits, because standing is dispositive in this case, and because most of the pages of Doe's deposition that are pertinent actually were filed in the district court. Where standing is lacking, the litigation should be stopped as early as possible: a matter of saving scarce resources as well as respect for the most basic Constitutional law.

16

After Doe's deposition was taken, a written declaration, which Doe signed, was prepared for Doe. Plaintiff used the declaration instead of the Doe deposition to respond to the County's motion for summary judgment on the issue of standing. Some of the basic facts from the declaration are the same as some of the basic facts in Doe's deposition testimony. But, the declaration seems to me to be largely inconsistent with the fair import of what Doe said when deposed under oath. I find Doe's deposition to be a more trustworthy representation of the facts. See, e.g., Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995) (when discounting a post-deposition affidavit "designed, it appears, to retract or explain away concessions that [a plaintiff] had made in his deposition," remarking that "[a]lmost all affidavits submitted in litigation are drafted by the lawyers rather than by the affiants."). I submit that a reasonable person who reads both Doe's deposition transcript and the declaration can see that the two documents are not nearly identical in substance.

Today's Court remands the case to the district court for an evidentiary hearing. I think this step is unnecessary and, therefore, incorrect. This Court can and should largely take our facts from what Doe said under oath at his deposition. Doe gave "clear answers to unambiguous questions"; so I would not credit the later declaration when it "contradicts, without explanation, previously given clear

17

testimony."  Van T. Junkins & Assocs. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984).[1]

B.

Judge Wilson sets out many of the facts.

In 2006, a County resident and local business owner asked for and received permission from the County Board of Commissioners to display a monument to the Ten Commandments on the steps of the County courthouse.  The County

---

[1]"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins, 736 F.2d at 657.  This idea is associated with judicial estoppel (not just simple credibility questions about a witness).  This idea has to do, to a significant degree, with guarding the integrity of the judicial process; with demanding respect for the oath to tell the truth; and with defining how a party is to deal properly with the Court from whom the party is seeking relief.  No decision of this Court has overruled Van T. Junkins:  even cases such as Tippens v. Celotex Corp., 805 F.2d 949, 954-55 (11th Cir. 1986) and Lane v. Celotex Corp., 782 F.2d 1526, 1530-31 (11th Cir. 1986), which stressed the -- now erroneous -- view that summary judgment is highly disfavored generally.  We ought not allow a party to create an issue of fact and to defeat a summary judgment motion by, without explanation, swearing to an affidavit that is inconsistent with that party's clear deposition testimony.  I would not allow Plaintiff to create an issue of fact by submitting an affidavit that, without explanation, substitutes a conclusory statement -- Doe would look for property immediately if the monument were removed -- for earlier clear deposition testimony to the contrary: for example, Doe could (might) intend to look for property if he sold his Trenton property.  As today's Court observes, at summary judgment a district court may not disregard two of plaintiffs' internally consistent affidavits when contradicted by affidavits of the defendant's witnesses on disputed facts material to standing.  Bischoff v. Osceola Cnty., Fla., 222 F.3d 874, 881 (11th Cir. 2000).  But, in this case, Doe -- a most interested party -- conclusorily contradicted himself.  The discrepancies go to the heart of Plaintiff's theory of standing; I am not talking about faulty memory about mere factual details.

18

courthouse is the center of government authority for the County and houses the offices of the Sheriff, the State Attorney, the Tax Assessor, the Board of County Commissioners, the Supervisor of Elections, the Clerk of Court, and the Register of Deeds.

The monument, which is taller than five feet and weighs six tons, has two parts: the tablets and the base. The full text of the Ten Commandments is inscribed on the two tablets. The tablets rest on a base on which large letters say: "LOVE GOD AND KEEP HIS COMMANDMENTS." The Ten Commandments monument sits alone at the top of the courthouse steps, facing the street.

The monument was installed in November 2006; and fewer than three months later, Plaintiff sued in federal court for a declaratory judgment, injunctive relief, and damages. Plaintiff claims that unwelcome contact with the monument harmed Doe, an ACLU member on whose behalf Plaintiff sues.

Doe lives in North Carolina -- the state he identifies as his primary residence -- and has lived there for twenty years. More recently he has maintained a "winter home" in Florida in addition to his primary residence in North Carolina. For about five months out of the year, Doe lives in that winter home in Trenton, Florida, which is in a county adjacent to Dixie County. Doe has never lived in or owned property in Dixie County.

19

In 2004, Doe became interested in buying real property in Dixie County. Doe wanted to buy land in Dixie County because he thought it to be one of a few counties in Florida that allow residents to live in recreational vehicles ("RVs") on their land; he does not currently live in an RV on his Trenton property. Doe made an offer to buy a piece of land in Dixie County in 2004, but that offer was rejected.

In his deposition, Doe testified about some handwritten notes listing "properties that [he] was going to go look at to consider purchasing" around December 2006. Doe did not know whether all of the properties, which he found after a "one-time property search,"[2] were in Dixie County. In January 2007, Doe visited one of the Dixie County properties in his notes; and he spoke to the real estate agent who was responsible for the listing. After visiting the property for a second time, Doe went to the County courthouse because he "had found a piece of property that [he] was considering purchasing and [he] wanted to review the records to find out more about the property."

The January 2007 visit to the courthouse was the first and only time Doe saw the monument on the courthouse steps. After seeing the monument, Doe continued into the courthouse and completed his business there. Doe has actually

---

[2] We do not know what kind of "property search" generated Doe's list of properties: internet, classified ads, and so on.

visited the Dixie County courthouse only this one time.

While at the courthouse, Doe found the information he wanted about the Dixie County property he was considering. But Doe did not buy the property. During his deposition, Defendant's lawyer asked Doe why he did not purchase that property. Doe answered this way: "Because of the Dixie County government probably. The display of the monuments, the monument." Doe explained that he "was somewhat offended by the monument being there," and that he "found other things [he] was offended by." Among the other things that offended him were (1) a cartoon in the assessor's office depicting an American soldier telling a French official "Well, you didn't make me show a Visa when I landed in Normandy"; (2) a writing in the assessor's office that said something like "the only two who gave blood for you or gave their souls for you were Jesus and the veterans"; and (3) a website that included the words "Patriot Properties" and "Dixie" in its web address, which an employee in the assessor's office recommended Doe visit if he had more questions.

Doe said that some "unwritten" things also caused him not to purchase property in the County. Doe "felt like an outsider" at the courthouse. Although the employees answered his questions and assisted him with what he needed, Doe said that "the people there . . . seemed to be a bit cold." "[W]hen I asked

21

questions, they [the employees] were very short and abrupt."

Doe had seen the Dixie County courthouse "ten times probably" before January 2007. Before his first visit to the courthouse, Doe had ridden his bicycle near the courthouse; and he had visited an ice cream shop from which he thinks -- but is not certain -- he can see the courthouse.

Doe, at the time of his deposition, had not put his winter home in Trenton, Florida, up for sale and had not decided whether to list the property with a real estate agent. When asked where he "intend[s] to reside if [he] would sell the property in Trenton," Doe said that his "intentions were to buy a piece of property in Dixie County, Florida, if I had sold the [Trenton] property. This was my, were my previous intentions and they also can be my intentions again." When asked whether he was considering purchasing property in Dixie County, Doe said "Hard to answer. Not at this very moment."

Doe has not been physically present at the courthouse since he saw the monument in January 2007. Doe has not needed "to use any of the services of the Dixie County courthouse" since January 2007. He has no legal obligations to fulfill at the courthouse and has no reason to go to the courthouse.

The district court denied the County's motion for summary judgment based on the standing issue. Later, the district court granted Plaintiff's motion for

22

summary judgment on the merits.

## II.

Article III of the United States Constitution gives the federal courts power to act only when we are called upon to resolve actual cases or controversies. The case or controversy requirement is a strong limitation on the power of the federal courts. Our Constitution obligates us to "say what the law is" but only when we are "assured" that we have "the power to do so." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 102 S. Ct. 752, 760 n.13 (1982) (emphasis added); Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803). Most disputes are not to be resolved by the federal courts; the doctrine of standing compels us first to identify those disputes that we rightly may resolve. See Whitmore v. Arkansas, 110 S. Ct. 1717, 1722 (1990).

For standing, our Constitution requires that the person bringing a case to federal court have a direct, personal, and certain stake in the outcome of the case that will be litigated in federal court. The "irreducible constitutional minimum" for standing includes three things: (1) an injury in fact; (2) a "causal connection"

23

between the injury and the alleged constitutional violation; and (3) a substantial likelihood that a favorable decision will redress the injury. Vt. Agency of Natural Res. v. United States ex rel. Stevens, 120 S. Ct. 1858, 1861-62 (2000); Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992). I think Plaintiff, as a matter of law, has failed to meet this standard.

Plaintiff has shown no injury that is the result of Doe's seeing -- and thus, knowing about -- the monument and that is sufficient for standing. Plaintiff argues that an injury is present in this case: Doe's (as Plaintiff might put it) assuming the burden of not "considering purchasing property" in the County.[3] I am unconvinced that Doe has been burdened by the monument. First, Dixie County demands nothing from Doe. In addition, Doe has no reason and no legal obligation to go to the pertinent courthouse; and Doe has no actual encounters with the courthouse or with the monument at any point in his life as he now lives it.

That a number of things at the courthouse -- instead of (or in addition to) his objection to the monument -- could be keeping him from resuming considering buying property in Dixie County tells us how abstract, remote, and conjectural

---

[3] Plaintiff concedes that "Doe's claim for relief is not based on his one-time January 2007 encounter with the display."

24

Doe's asserted injury specifically from the monument is.  The record in this case is complete enough for us to decide -- as a matter of law -- the issue of standing.  As a matter of law, I say that the record (including Doe's deposition) cannot assure the federal courts that more than a mere possibility exists that Doe would seriously even consider buying property in the County -- much less really buy property in or reside in Dixie County -- if a federal court required the monument to be removed, overriding the elected county officers' own decisions to allow the monument.

A.

The Supreme Court has explained what kind of injury a plaintiff must establish to assure us of his constitutional standing.  The injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan, 112 S. Ct. at 2136.  I take the idea of a concrete injury seriously because it is through that injury that we, as nonelected judges, gain the lawful and great power to override elected governments.  I conclude Doe has failed to show the needed actual or imminent injury.  His supposed desire to resume considering the possibility of purchasing property in the County is far too vague and too hypothetical to allow us even to consider a question that might cause us to

25

override an elected local government.

Plaintiff argues that Doe's injury is "the inability to carry out his legitimate business at the Dixie County Courthouse in connection with his well-documented intention and effort to purchase property in Dixie County and move there." Plaintiff says that the harm Doe suffers is comparable to the harm the plaintiffs in some of our other cases suffered and that Doe has assumed a special burden to avoid seeing the monument.  I agree with today's Court that the precedents upon which Plaintiff relies are stronger cases for standing.

Plaintiff points us to ACLU v. Rabun Cnty. Chamber of Commerce, Inc., 698 F.2d 1098 (11th Cir. 1983), and to Glassroth v. Moore, 335 F.3d 1282 (11th Cir. 2003), as examples of cases in which this Court decided that plaintiffs who alleged that public religious displays violated the Establishment Clause had injuries sufficient to confer standing.  I credit those precedents.  But those cases are of no help to Plaintiff: the facts in those cases are just too different from the facts in this case.

Rabun was a case brought by Georgia citizens who were regular campers in the state who challenged a cross on Georgia state park land.[4]  698 F.2d at 1103.

_____

[4] For cases in which an association-plaintiff, like the ACLU, has claimed standing based on the asserted injury of one of its members, I refer to the actual persons claiming injury as the plaintiffs.

26

That the Rabun plaintiffs were "residents of Georgia who make use of public parks which are maintained by the State of Georgia" provided us with a "necessary connection" between the plaintiffs and the alleged constitutional violation. Id. at 1107. Here that connection is missing. In reality, Doe has no actual connection to Dixie County: he chiefly resides in North Carolina, and it is not even clear that Dixie County is the only county in Florida in which he will some day consider purchasing property (or, in which he is considering purchasing property some day).

The Alabama lawyer plaintiffs in Glassroth had actually seen the offending monument in the Alabama State Judicial Building several times and would inevitably need to have seen the monument in the future performance of their state-licensed professional duties. 335 F.3d at 1288. Doe, a non-resident of Dixie County, has seen the monument once, has no obligation or occasion to visit the courthouse or Dixie County, and is not sure when he will visit the courthouse or the County again, if ever.

From another Circuit, Plaintiff says that Doe's injury is more severe than that of the plaintiffs in ACLU v. City of St. Charles, 794 F.2d 265 (7th Cir. 1986). I disagree. The plaintiffs in St. Charles sued the City in which they lived; they were injured by having to detour inconveniently from streets they ordinarily used

27

so that they could avoid a lighted cross that the Seventh Circuit said "curtail[ed] their use of public rights of way."  794 F.2d at 268.

Plaintiff has shown us no case in which a person similar to Doe -- a non-resident (who cannot see the monument from his home) who receives no services from, owes no duties to, and is not required to visit regularly (or even infrequently) a local government jurisdiction with whom he has no actual relationship -- had standing to sue a government (unconnected to him) for having a monument on the steps of its administrative building.  For standing, we do not search for the ideal.  But the Constitution requires something more than the facts presented here to empower legitimate federal judicial action: even an evidentiary hearing in district court.

Doe's affidavit says Doe will not consider buying land in the pertinent county as long as the monument is there.  To me, Plaintiff's theory of standing is makeshift in nature: some kind of cursory, drive-by theory of standing -- insufficient to kick on our powers.  The Supreme Court has told us that a plaintiff's just asserting he was injured is not enough for standing: to make a federal case out of an Establishment-Clause violation from government conduct, the conduct must directly and concretely injure the plaintiff.  The Constitution's Establishment Clause, according to the Supreme Court, "does not provide

28

[offended parties] a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court." Valley Forge, 102 S. Ct. at 766.

When the acts necessary to make a plaintiff's asserted injury happen are in the plaintiff's own control (going to the courthouse in another county), the Supreme Court "insist[s] that the injury proceed with a high degree of immediacy." Lujan, 112 S. Ct. at 2138-39 n.2.

Doe's "vague desire" to intend to consider looking for property in the County, with no specific and concrete plan to do so, is insufficiently imminent to establish injury for standing. See Summers v. Earth Island Inst., 129 S. Ct. 1142, 1150-51 (2009). Doe has no current intention to look for property in Dixie County; that buying property in the County "can be [his] intentions again" is not good enough: his asserted injury is too remote and too hypothetical to be a Constitutional injury.

Besides, Doe said that he could intend to buy property in Dixie County if he sold his Trenton property. He had not sold the Trenton property when the civil action was filed; as far as the record shows, he still has not sold the Trenton property. At the time of his deposition, Doe had no specific plans to sell his

29

Trenton property.[5]  "Such 'some day' intentions" without concrete plans or "specification of <u>when</u> the some day will be" are not enough for "actual or imminent" injury.  <u>Lujan</u>, 112 S. Ct. at 2138 (emphasis in original).  Doe testified that he does not know when the some day will be.[6]

This record is good enough now and does not establish Doe's injury in fact. I would rule today that Plaintiff has no standing to sue on Doe's behalf.

B.

---

[5]For jurisdiction, standing had to exist when the suit was filed (not arise later).  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 120 S. Ct. 693, 704 (2000) ("[W]e have an obligation to assure ourselves that [the plaintiff] had Article III standing at the outset of the litigation.").  It is not enough for Plaintiff to try to establish, in terms of shifting reality, the requirements of standing as the case progresses through the federal courts.

[6] Doe's testimony about his future intentions to look for property in Dixie County reads like the testimony the Supreme Court decided was insufficient to support a finding of "actual or imminent" injury in <u>Lujan</u>:

> Ms. Kelly stated that she traveled to Egypt in 1986 and "observed the traditional habitat of the endangered nile crocodile there and <u>intends to do so again</u>, and hopes to observe the crocodile" . . . . Ms. Skilbred . . . "<u>intends to return</u> to Sri Lanka <u>in the future</u> . . . ."  When Ms. Skilbred was asked at a subsequent deposition if and when she had any plans to return to Sri Lanka, she reiterated that "<u>I intend to go back</u> to Sri Lanka," but confessed that <u>she had no current plans</u>: "I don't know when.  There is a civil war going on right now.  <u>I don't know</u>. Not next year, I will say.  <u>In the future</u>."

112 S. Ct. at 2138 (emphasis added) (citations and alterations omitted).  In Doe's deposition, he does not even say -- although the <u>Lujan</u> plaintiffs did say -- that he actually *intends* to do anything.  Doe says that he *could* intend to buy property *if* he sells his home in Trenton (a sale for which he has no specific plans).

30

Addressing the causation and redressability elements of standing is difficult because Doe has established no injury (with no injury a federal court cannot decide the cause or provide a cure). Even so, Plaintiff has not come close to assuring me that Doe's behavior really would likely change as a result of his getting the monument to be removed.

I have reviewed Doe's testimony about his considering buying property in Dixie County and about his reasons for not buying property in the County. (I pass over the usual reasons and things like never having agreed on price). Doe has said that he did not purchase property for many reasons:[7] including the Dixie County government, a writing, a cartoon, a website, being "coldly" treated by the people at the courthouse, and the Ten Commandments monument (and no sale of his current property). Because Doe says that many things in the courthouse -- aside from just the monument Plaintiff challenges -- caused him to stop looking to buy property, I see only a mere possibility (no "substantial likelihood") that Doe would intend to look seriously for property to buy in the County, if the district court again ordered the monument to be removed and it was removed.[8]

---

[7] Compare, for example, Rabun, where the plaintiffs said "they would not camp" in the pertinent state park "because of the cross." 689 F.2d at 1104.

[8] Today, for discussion's sake, I have supposed that someone in Doe's position -- for standing -- would not have to have in hand some kind of contract that truly obligated him, contingent only upon the removal of the pertinent monument, to have (without significant delay)

31

III.

Under the Constitution, the question of jurisdiction must be dominant in the thinking of federal judges.  We must watch our jurisdiction like a hawk.  Parties to litigation cannot stipulate to Article III Court jurisdiction.  In the same line, I decline to turn a blind eye to the full transcript of Doe's deposition taken in this civil action, although the parties here did not file the whole deposition with the district court.  It is not the business of our Court to decide substantive legal questions when no actual "case or controversy" -- the condition precedent to legitimate federal judicial action -- is before us.  Valley Forge, 102 S. Ct. at 767.

Perhaps someone else believes they are injured by this monument.  Perhaps another action will be brought or perhaps not.  But no sufficiently injured party -- who has shown all of standing's elements -- is before the Court in this civil action.

Plaintiff has failed to show me its standing so that Article III Courts have legitimate power to decide the substantive question Plaintiff raises or even to give Plaintiff a third chance to show standing.  Today, I would reverse the district court's decision on standing, vacate the judgment for Plaintiff, and remand the

---

a regular presence in Dixie County.  Of course, Doe is not now (and never has been) under any obligation to do anything about property in Dixie County -- now or in the future: whether the monument is removed per federal court order or not.

32

matter to the district court for dismissal based on lack of jurisdiction.