# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 6, 2014          Decided June 13, 2014

No. 13-1014

SIERRA CLUB, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY AND GINA
MCCARTHY, ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENTS

BIG BROWN LIGNITE COMPANY, LLC, ET AL.,
INTERVENORS

On Petition for Review of Final Action of the
United States Environmental Protection Agency

*Thomas Cmar* argued the cause for petitioners. With him on the briefs were *Abigail Dillen* and *Jocelyn D'Ambrosio*.

*Norman L. Rave Jr.*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief was *Robert G. Dreher*, Acting Assistant Attorney General.

*Norman W. Fichthorn* argued the cause for intervenors. With him on the brief were *E. Carter Chandler Clements*, *Aaron M. Flynn*, and *Leslie S. Ritts*.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* ROGERS, with whom Judge Henderson and Judge Tatel join.

ROGERS, *Circuit Judge*:   On November 19, 2012, the Assistant Administrator of the Environmental Protection Agency issued a memorandum to regional directors on the "Next Steps for Pending Redesignation Requests and State Implementation Plan Actions Affected by the Recent Court Decision Vacating the 2011 Cross-State Air Pollution Rule."  The Memorandum stated that certain pending state submissions could proceed based on emissions reductions under a rule this court had invalidated but temporarily left in effect pending its replacement.   Petitioners challenge the Memorandum on procedural and substantive grounds.  The court lacks jurisdiction to consider their challenge because petitioners fail to show they suffer injury that is imminent or certain as a result of the Memorandum, and therefore they lack standing to sue. Accordingly, we dismiss the petition for review.

## I.

The Clean Air Act ("CAA"), 42 U.S.C. § 7410(a)(1), requires each State to submit for approval by the EPA an implementation plan ("SIP") specifying how national primary and secondary ambient air quality standards ("NAAQS") will be implemented and maintained within the State.  To redesignate an area from non-attainment to attainment of the applicable NAAQS, EPA must determine that "the improvement in air quality is due to *permanent and enforceable* reductions in emissions resulting from implementation of the applicable implementation plan and applicable Federal air pollutant control regulations and other *permanent and enforceable* reductions." *Id.* § 7407(d)(3)(E)(iii) (emphasis added).  In States containing

"mandatory class I Federal areas," such as national parks and wilderness areas, the SIP must include such "measures as may be necessary to make reasonable progress toward meeting the national goal" of remedying impairment of visibility caused by manmade pollution, including requiring that certain emitting sources use the "best available retrofit technology" ("BART") to control emissions, and a 10–15 year strategy for making reasonable progress. *Id.* § 7491(a), (b)(2). EPA regulations allow an "emissions trading program or other alternative" to BART so long as the alternative "achieve[s] greater reasonable progress" than BART. 40 C.F.R. § 51.308(e)(2).

Under the CAA's good-neighbor provision, 42 U.S.C. § 7410(a)(2)(D)(I), a SIP must also include "adequate provisions" prohibiting emissions activity within the State from "contribut[ing] significantly to nonattainment in, or interfer[ing] with maintenance by, any other State with respect to any such [NAAQS]." The Clean Air Interstate Rule ("CAIR"), 70 Fed. Reg. 25,162 (May 12, 2005), was designed to carry out the good-neighbor provision. It was initially vacated by this court in *North Carolina v. EPA*, 531 F.3d 896, 929–30 (D.C. Cir. 2008), but, upon reconsideration, was "allow[ed] . . . to remain in effect until it is replaced by a rule consistent with our opinion [because this] would at least temporarily preserve the environmental values covered by CAIR," *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008); *see also id.* at 1178–79 (Rogers, J., concurring in granting rehearing in part). The subsequent Cross-State Air Pollution Rule (the "Transport Rule"), 76 Fed. Reg. 48,208 (Aug. 8, 2011), was to replace CAIR, but it was also vacated by this court, *see EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 38 (D.C. Cir. 2012), *cert. granted*, 133 S. Ct. 2857 (2013); *see also id.* at 38–61 (Rogers, J., dissenting). The court instructed "EPA [to] continue administering CAIR pending the promulgation of a valid replacement," *id.* at 38 (majority opinion).

The Memorandum of November 19, 2012, "communicate[d] . . . [EPA's] intent with regard to a range of actions potentially affected by" this court's decision in *EME Homer City*. Mem. at 1. It stated that "[c]ertain state submittals awaiting approval . . . may be partly dependent on the assurance of ongoing regional $NO_x$ and $SO_2$ emission reductions" based on "the expectation that [the Transport Rule] . . . would be fully implemented." *Id.* With regard to pending "attainment SIPs, redesignation requests, and associated maintenance SIPs," the Memorandum stated that "based on th[e] direction from the Court [in *EME Homer City* to 'continue administering CAIR'], . . . it will be appropriate to rely on CAIR emission reductions as *permanent and enforceable* for *certain actions* in certain circumstances." *Id.* at 1–2 (emphasis added).

> Specifically, . . . it will be appropriate to rely on those reductions either until th[e] petition [for rehearing filed by EPA] and any further proceedings in the . . . case are resolved or, if the decision vacating [the Transport Rule] is not changed, until a valid replacement rule is developed and implementation plans complying with any new rule are submitted by the states and acted upon by the EPA. Thus, action on those pending requests and SIPs may go forward.

*Id.* at 2. With regard to regional haze, the Memorandum stated that it "will be appropriate to approve" a specific proposed state regional haze plan "that relies on CAIR emission reductions." *Id*. The Memorandum also stated that "at this time the EPA does not intend to make findings that states failed to submit SIPs to comply with [the good neighbor provision]," *id.*; this court had instructed in *EME Homer City*, 696 F.3d at 37, that "[w]hen EPA quantifies States' good neighbor obligations, it must give the States a reasonable first opportunity to implement those obligations."

5

**II.**

Petitioners contend that the Memorandum is a legislative rule that required a notice-and-comment rulemaking process, and, further the Memorandum is arbitrary and capricious and contrary to law in allowing regions to rely on temporary emissions reductions from CAIR rather than demonstrating "permanent and enforceable" reductions. EPA maintains that Petitioners lack standing and that the Memorandum is neither final agency action, nor a rule, nor inconsistent with either the CAA or this court's precedent. Our consideration of the Memorandum begins and ends with an examination of our jurisdiction to consider Petitioners' contentions.

**A.**

This case is not moot as a result of the Supreme Court's recent decision in *EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584 (2014), reversing the vacatur of the Transport Rule. "A case becomes moot — and therefore no longer a 'Case' or 'Controversy' for purposes of Article III — 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (internal quotation marks omitted) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

Petitioners acknowledge that their petition would be moot if EPA ceased relying on CAIR. EPA, in turn, acknowledges that the Supreme Court's decision means the specific factual circumstance addressed by the Memorandum no longer exists. EPA counsel advised during oral argument, however, that EPA has not yet determined whether it will continue to rely on CAIR emissions reductions. Counsel explained this is because there are pending SIP submissions as to which EPA faces certain deadlines as well as outstanding challenges to the Transport

Rule that this court must still address. *See* Oral Arg. Rec. 18:43–19:45; *see also, e.g.*, 42 U.S.C. § 7410(c).

Because EPA has not yet determined that the Memorandum's instructions regarding reliance on CAIR emissions reductions will no longer apply to pending SIP submissions, it is not "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC*, 133 S. Ct. at 727 (internal quotation marks omitted). Therefore, the petition is not moot.

**B.**

Petitioners do not claim to have standing under Article III of the U.S. Constitution based on injury to themselves. Instead, they claim that they have associational standing because (1) at least one of their members would have standing to sue; (2) the interests they seek to protect are germane to the organizations' purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)); *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815 (D.C. Cir. 2006). Because Petitioners are not the objects of the Memorandum, standing "is ordinarily 'substantially more difficult' to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)); *see Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002). Here, it is only necessary to address the first requirement, which entails Petitioners showing that at least one of their members has (1) suffered an "injury in fact" that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical," (2) the injury is "fairly traceable to the challenged action," and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable [judicial]

decision." *Laidlaw Envtl. Servs.*, 528 U.S. at 180–81 (citing *Defenders of Wildlife*, 504 U.S. at 560–61); *cf. Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).

Petitioners have submitted two sets of declarations from their members that are relevant to standing. The first set is from three members who are concerned that by authorizing approval of redesignation requests relying on CAIR, the Memorandum has denied them the protection of "permanent and enforceable" emission reductions "guarantee[d]" by the CAA. *See* Decl. of Beth Remmes ¶¶ 6–7 (Sept. 17, 2013); Decl. of William Lide ¶¶ 8–9 (Sept. 9, 2013); Decl. of Kelly Pierce ¶¶ 11–12 (Sept. 22, 2013). These members identify two areas in which they live — Chicago and Atlanta — that EPA proposed to redesignate from non-attainment to attainment based on CAIR emissions reductions. Although they live in areas that currently meet the applicable NAAQS, these members fear those areas may fail to do so if, in the future, emission sources increase their emissions when CAIR is replaced by another program to control interstate transport of pollutants and those increased emissions cause the Chicago or Atlanta areas to violate the NAAQS. *See, e.g.*, Remmes Decl. ¶ 7. They are aware CAIR "was struck down by a court years ago," and they consequently view CAIR emissions reductions to be "temporary." *See, e.g., id.* ¶ 6. As Petitioners note, this court instructed EPA to replace CAIR "expeditiously." *EME Homer City*, 696 F.3d at 38 n.35; *see also North Carolina*, 550 F.3d at 1178.

The second set of declarations is from Petitioners' members who visit Shenandoah National Park in Virginia, or Mingo National Wildlife Refuge in Missouri, or Mammoth Cave National Park in Kentucky. They understand the Memorandum to be EPA's general authorization to approve regional haze plans that rely on CAIR emission reductions as an alternative to requiring sources to use BART. *See* Decl. of Drew S. Toher

¶¶ 5–7 (Sept. 20, 2013) (National Parks Conservation Association); Decl. of John Hickey ¶¶ 5–7 (Aug. 29, 2013) (Sierra Club); Decl. of Jim Duffer ¶¶ 4–7 (Sept. 10, 2013) (Sierra Club); Decl. of Joseph Roberts ¶¶ 4–7 (Sept. 6, 2013) (NRDC). Although the "permanent and enforceable" provision of the CAA applies only to redesignation requests and the regional haze regulation cited by Petitioners refers only to "enforceable emissions limitations," 40 C.F.R. § 51.308(d)(3), EPA requires "as a policy matter" that control measures in a regional haze plan "be permanent for the length of the relevant plan," Resp't's Br. 28. These members are concerned that reliance on CAIR will allow greater pollution in the class I areas they visit. *See, e.g.*, Toher Decl. ¶ 7.

Based on these declarations Petitioners maintain that they have shown Article III injury-in-fact because the Memorandum "strips away the Clean Air Act's guarantee of enduring air quality protections, threatening imminent injury to members who live and breathe in areas where temporary emissions reductions from CAIR can now substitute for the durable emissions controls that they are guaranteed under the Act." Pet'rs' Br. 16. Their members are directly injured, Petitioners maintain, because they rely on the guarantee that the places they live and visit will not be found to have met required air quality standards unless the State can demonstrate that air quality improvement was caused by "permanent and enforceable" emissions reductions. Between August 8, 2011,when the Transport Rule was promulgated, and December 31, 2011, when this court stayed the rule, EPA had determined that CAIR emissions reductions "could not be considered to be permanent." *See, e.g.*, Proposed Rule, Redesignation of the Birmingham 2006 24-Hour Fine Particulate Matter Nonattainment Area to

Attainment, 76 Fed. Reg. 70,091, 70,093 (Nov. 10, 2011).[1]
Since the Memorandum was issued, EPA has approved
submissions relying on CAIR emissions reductions as
"sufficiently permanent and enforceable for purposes such as
redesignation." Redesignation of the Birmingham 2006 24-
Hour Fine Particulate Matter Nonattainment Area to Attainment,
78 Fed. Reg. 5306, 5308 (Jan. 25, 2013).[2] EPA has also
proposed to approve a regional haze plan relying on CAIR as an
alternative to BART. *See* Proposed Rule, Connecticut; Regional
Haze, 78 Fed. Reg. 5,158, 5,160–61 (Jan. 24, 2013).

Petitioners fail to show they are suffering an injury-in-fact
that is fairly traceable to the Memorandum. First, their members
who are concerned about the effects of redesignations based on
CAIR emissions reductions live in the Chicago or Atlanta areas,
*see* Remmes Decl. ¶ 3; Lide Decl. ¶ 2; Pierce Decl. ¶ 2, which
are currently achieving the NAAQS. *See* Redesignation of the
Atlanta 1997 8-Hour Ozone Moderate Nonattainment Area to
Attainment, 78 Fed. Reg. 72,040, 72,041 (Dec. 2, 2013);
Redesignation of the Chicago Area to Attainment of the 1997
Annual Fine Particulate Matter Standard, 78 Fed. Reg. 60,704,

---

[1] *See also* Proposed Rule, Redesignation of the Kentucky
Portion of the Cincinnati-Hamilton 1997 Annual Fine Particulate
Matter Nonattainment Area to Attainment, 76 Fed. Reg. 65,458,
65,460 (Oct. 21, 2011); Proposed Rule, Redesignation of the
Greensboro-Winston-Salem-High Point 1997 Annual Fine Particulate
Matter Nonattainment Area to Attainment, 76 Fed. Reg. 59,345,
59,347 (Sept. 26, 2011).

[2] *See also* Redesignation of the Birmingham 1997 Annual
Fine Particulate Matter Nonattainnment Area to Attainment, 78 Fed.
Reg. 4341, 4343 (Jan. 22, 2013); Redesignation of the Ohio Portion
of the Huntington-Ashland 1997 Annual Fine Particulate Matter
Nonattainment Area to Attainment, 77 Fed. Reg. 76,883, 76,885–87
(Dec. 31, 2012).

60,705 (Oct. 2, 2013). Petitioners do not challenge the NAAQS and offer no evidence to show one of those members is suffering an injury-in-fact from denial of the public health and public welfare protections of the CAA. Instead, Petitioners speculate that the Memorandum will permit excessive emissions after CAIR is replaced by another interstate pollution program, degrading air quality in the Chicago or Atlanta areas in violation of the "permanent and enforceable" guarantee in the CAA.

Second, the members concerned about haze have read the Memorandum to provide a general authorization to approve haze plans based on CAIR emissions reductions. *See* Toher Decl. ¶ 7; Hickey Decl. ¶ 7; Duffer Decl. ¶ 7; Roberts Decl. ¶ 7. But the discussion of regional haze in the Memorandum can be construed to authorize action only with regard to a single pending haze plan. *See* Mem. at 2. None of Petitioners' members claimed to have visited or stated an intent to visit class I areas in Connecticut, which submitted the pending haze plan affected by the Memorandum's instruction to proceed. *See* Resp't's Br. 17, 22; Intervenors' Br. 13. As regards "two other categories of regional haze actions taken prior to" vacatur of the Transport Rule, the Memorandum stated EPA would await a decision on its then-pending petition for rehearing in *EME Homer City*. In those actions EPA partially disapproved regional haze plans (including those of the States visited by Petitioners' members) relying on CAIR and issued federal implementation plans relying on the Transport Rule, having found that "the trading programs in the Transport Rule . . . achieve greater reasonable progress towards the national goal of achieving natural visibility conditions in Class I areas than source-specific [BART]." *Regional Haze: Revisions to Provisions Governing Alternatives to Source-Specific Best Available Retrofit Technology (BART) Determinations, Limited SIP Disapprovals, and Federal Implementation Plans*, 77 Fed. Reg. 33,642, 33,642 (June 7, 2012); *see id.* at 33,645,

33,653–54. Again, Petitioners offer no evidence one of their members is suffering an injury-in-fact and instead speculate that the Memorandum will allow for greater pollution in class I areas after CAIR is replaced, lagging behind the visibility progress achievable through use of BART.

Both of Petitioners' claims of injury fail to qualify as actual or imminent. Because "[e]nvironmental and health injuries often are purely probabilistic," the court has "generally require[d] that petitioners" claiming "increased health risks" to establish standing "demonstrate a 'substantial probability' that they will be injured," in order to avoid rendering the injury-in-fact requirement moot. *Natural Res. Def. Council v. EPA*, 464 F.3d 1, 6 (D.C. Cir. 2006). The increased risk "must be 'non-trivial,' . . . and 'sufficient to take a suit out of the category of the hypothetical.'" *Id.* (quoting *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1234–35 (D.C. Cir. 1996)). Petitioners rely on vague generalities and make no attempt to tie EPA's alleged failure to implement the CAA's guarantees to a substantial probability that they will suffer diminished air quality. As EPA points out, Petitioners have offered no evidence to suggest that CAIR-based emissions reductions will be fleeting or that a replacement program will result in increased emissions. *See* Resp't's Br. 16. To that extent Petitioners' allegations regarding a risk of concrete harm "rel[y] on a highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013).

Petitioners' reliance on guarantees of "permanent" emissions reductions is thus tantamount to "an abstract, and uncognizable, interest in seeing the law enforced." *Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 432 (D.C. Cir. 1998) (citing *Allen v. Wright*, 468 U.S. 737. 754 (1984)). The cases on which Petitioners rely illustrate that their alleged loss of statutory and regulatory "guarantees" fails to establish

injury-in-fact. Unlike the petitioner in *Natural Resources Defense Council v. EPA*, 643 F.3d 311, 318 (D.C. Cir. 2011), Petitioners do not claim that the Memorandum delayed attainment or eliminated incentives to reduce emissions. Neither do Petitioners show a concrete aesthetic injury as in *Animal Legal Defense Fund*, 154 F.3d at 431, where a plaintiff witnessed "particular animals enduring inhumane treatment"; Petitioners' members refer to haze marring the visual beauty of class I areas, *see, e.g.*, Toher Decl. ¶ 6, that is no different from the "guarantees" claim. Neither have Petitioners shown that the alleged "stripping away" of guarantees, Reply Br. 7, caused "uncertainty as to whether the EPA's actions expose[d] [their members] to excess air pollution," as in *New York Public Interest Research Group v. Whitman*, 321 F.3d 316, 325 (2d Cir. 2003). Petitioners' members live in attainment areas and visit class I areas as to which the Memorandum authorized no change.

Further, because Petitioners have failed to establish that they will likely suffer a substantive injury, their claimed procedural injury — being denied the right to comment on the Memorandum — necessarily fails. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation — a procedural right *in vacuo* — is insufficient to create Article III standing." *Summers*, 555 U.S. at 496; *see also Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 15–16 (D.C. Cir. 2011).

Accordingly, we dismiss the petition for lack of jurisdiction.